**Don A. BROWN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14101.**

United States Court of Appeals
Ninth Circuit.

Oct. 4, 1954.

Hayden C. Covington, Brooklyn, N. Y., and John H. Brill, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before STEPHENS, BONE and POPE, Circuit Judges.

PER CURIAM.

Convicted of the offense of refusal to submit to induction under the provisions of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq., Brown appeals and includes in his list of assigned errors in the court below, the assertion that the refusal of the Selective Service Boards to grant him exemption as a minister of religion was without basis in fact and that such action on the part of the boards was arbitrary and capricious.

When Brown filed his questionnaire and later when he appeared before the local board in support of his claim for exemption, he fell short of being able to show that he was entitled to a ministerial classification. He was then employed as a block setter working on an average of 40 hours a week for a lumber company at Sonora, California. While he claimed to be an ordained minister because he had been baptized, yet at the time of his appearance before the board he was unable to furnish any evidence that he was the minister of any congregation or that he was engaged in any particular religious activity aside from the fact that he was saving his money in order to be able to attend a religious convention in Paris. However, subsequent to this appearance which occurred in May, 1951, and under date of December 1, 1951, he received written notice from the Watchtower Bible and Tract Society

that he had been appointed a "Pioneer" and was enrolled on that Society's records as a full time minister of Jehovah's Witnesses. On December 22, following, he transmitted to the local board written notice of his claimed change of status and with it the letter of appointment mentioned and the written sworn statements of two individuals attesting to his ministerial status. One of these persons described himself as a "company servant", acting as general overseer on behalf of the Jehovah's Witnesses of all preaching activity in the area which included Susanville, California, to which Brown was assigned to carry on his preaching activities. The notice of his appointment disclosed that he was expected to perform a minimum of 100 hours work per month in a house to house ministry, including class and bible studies. His letter also stated that he was now performing this required work without compensation from Jehovah's Witnesses but that in order to provide himself with subsistence and to defray his expenses, he was working for short periods at part time secular jobs.

On February 26, 1952, Brown was directed to report for physical examination, and under date of April 2, 1952, he transmitted to the local board additional documents in support of his claim that he was a minister of religion. These included written statements of neighbors purporting to be acquainted with him

and the sworn statement of George L. Dickinson, the same person who was involved in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152. Dickinson recited that Brown had been his companion in religious work; that he had been preaching from the pulpit every week as well as teaching "from the curbstone". There was also a written certificate purporting to be signed by the Superintendent of Ministers and Evangelists of Watchtower Bible and Tract Society and reciting that Brown had been duly appointed as a "Pioneer" minister of that society on December 1, 1951. The board acknowledged the receipt of this additional information and advised Brown that his classification would not be reopened or changed.[1]

In October, 1952, Brown's file was sent to the Presidential appeal board and that board retained him in I-A. In January, 1953, Brown furnished further evidence that he had been promoted to the office of "assistant company servant" of the Susanville, California, company of Jehovah's Witnesses. In March, 1953, he was ordered to report for induction. He failed to submit and his prosecution followed.

■ A careful examination of Brown's entire record before the various draft boards discloses that, like in the case of Dickinson, his situation changed after he was first classified by the local board.[2] Full information of these facts

1. Subsequent to Brown's personal appearance before the local board in May, 1951, he was given a I-A classification which he appealed to the appeal board. Since he also claimed exemption as a conscientious objector he had a hearing before the hearing officer appointed by the Department of Justice. The report of that officer and of the Department was unfavorable on the question of conscientious objection and the appeal board classified him on October 25, 1951, I-A. It was subsequent to this date that he transmitted the information concerning his claimed change of status to the local board.

2. The timing of Brown's ministerial appointments is interesting. After action by the appeal board retaining him in

I-A, which occurred October 25, 1951, Brown requested a review by the national board, but the state director, after study of his file, returned it to the local board on November 15, 1951. His appointment as a "Pioneer" full time minister, followed on December 1. He was then 19 years of age. Subsequently, however, the director took an appeal to the President on November 17, 1952. This resulted in his I-A classification by the national board on December 29, 1952. In the meantime, on December 8, 1952, the Watchtower Society executed his appointment as "assistant company servant".

The members of this court, after hearing a number of similar cases, are not without curiosity as to whether nineteen

was supplied to the local board at times when that board had jurisdiction of his case. If a change of status was disclosed it was the duty of the board to take it into consideration and to classify him in the light of the new evidence presented. United States ex rel. Hull v. Stalter, 7 Cir., 151 F.2d 633, 635; Knox v. United States, 9 Cir., 200 F.2d 398, 401; Dickinson v. United States, supra, 346 U.S. p. 392, 74 S.Ct. 152; Jewell v. United States, 6 Cir., 208 F.2d 770, 771.

■ We find that this subsequent showing of Brown was fully as adequate to disclose a minister of religion status as was that in the Dickinson case. Here as there the evidence was uncontroverted. Accordingly, upon the authority of that case, the judgment is reversed.

year old Jehovah's Witnesses, about to be drafted, are customarily handed ministerial appointments. As put by Mr. Justice Jackson in his dissent in the Dickinson case [346 U.S. 389, 74 S.Ct. 158]; "These events on the eve of his classification and in view of his youth

may have raised doubt as to his good faith." But even if a survey should show a general practice to make such appointments in a similar timely manner, the decision in the Dickinson case would make such a showing irrelevant.