Norman Christian **WOLFE, Jr.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 13377.

United States Court of Appeals
Sixth Circuit.

May 22, 1958.

Hayden C. Covington, Brooklyn, N. Y. (Victor F. Schmidt, Columbus, Ohio, on the brief), for appellant.

Donald F. Welday, Jr., Detroit, Mich. (Fred W. Kaess, Detroit, Mich., on the brief), for appellee.

Before SIMONS, Chief Judge, and MARTIN and BAZELON, Circuit Judges.

PER CURIAM.

This is an appeal by a Jehovah's Witness from a judgment of conviction and a sentence thereon of three years' imprisonment upon his conviction on an information charging that, after he had been duly and regularly notified by a designated local board in Michigan to report for civilian work contributing to the maintenance of the national health, safety, or interest, he reported at the Northville State Hospital in Michigan but wilfully refused to obey the order and accept such civilian work in accordance with Section 1660 of Selective Service Rules and Regulations of 1948, as amended, and in violation of Sections 456(j) and 462(a), U.S.C.A., Title 50, Appendix.

In a painstaking opinion dealing with all the material arguments advanced by the attorney for appellant, the district judge denied a motion for acquittal and held the defendant-appellant guilty as charged in the information. He properly applied the opinion of this court in Rowton v. United States, 6 Cir., 229 F.2d 421, in which we held that the failure of a local Selective Service Board to post the names of advisors to registrants in the board's office, as required by regulations, did not prejudice nor deny procedural due process to three persons who, upon classification as conscientious objectors, had refused to do civilian work of national importance in lieu of induction into the armed forces, the three appellants having been afforded fair and reasonable opportunity to present claims of exemption based upon ministerial status as Jehovah's Witnesses.

We think the opinion of the district court has made it abundantly clear that the local board in this case properly classified the defendant 1–O. In Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132, the Supreme

Court said: "If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' " Of course, as was well pointed out by the district judge, the court held in the Dickinson case that there was no basis in fact for the board's refusal to give the defendant a 4–D classification, because of the facts involved; but the facts in the instant case do not correspond to those in the Dickinson case.

Under the circumstances confronted here, thoroughly developed in the opinion of District Judge Freeman, it is apparent that neither the local board, nor the appeal board, nor the presidential board acted without basis in fact, or arbitrarily, or capriciously, or contrary to law, in refusing to grant the appellant here a 4–D ministerial classification. The district court demonstrated in its opinion that no other ground urged by appellant in the district court and repeated here was meritorious.

Accordingly, the judgment of the district court is affirmed.

BAZELON, Circuit Judge (dissenting).

The propriety of the local board's reclassification of appellant from 4–D (minister) to 1–O (conscientious objector) on October 2, 1953, is not in question. "What is at issue is the decision of [appellant's] local board to continue him in [1–O] * * * after he requested reclassification based on changed conditions in his vocation occurring subsequent to [October 2, 1953]." Dickinson v. United States, 1953, 346 U.S. 389, 392, 74 S.Ct. 152, 155, 98 L.Ed. 132. See, also, Jewell v. United States, 6 Cir., 1953, 208 F.2d 770, 771; Brown v. United States, 9 Cir., 1954, 216 F.2d 258, 260; United States ex rel. Hull v. Stalter, 7 Cir., 1945, 151 F.2d 633, 635.

On October 14, 1953, appellant informed the board that his abandonment of full-time religious activity (pioneering) had been occasioned by a need to put his affairs in order for the proper support of his family. He stated that it had always been his intention to resume his full-time ministry, having planned to do so by January 1, 1954, and that, under pressure of the board's action, he was about to resume his ministry without further delay. Shortly thereafter, appellant's employer notified the board on appellant's behalf that appellant would thereafter work at his secular job only from 8:00 a. m. to noon. On November 1, 1953, appellant was given a "pioneer appointment" constituting him a full-time minister. Notice of this appointment was given to the board. His "full-time pioneer" assignment, as he told the board, was as instructor at the Theocratic Ministry School. He was the only full-time pioneer in the forty to fifty member congregation of Jehovah's Witnesses in his town.

After a personal interview with appellant in the course of which the foregoing facts were discussed with him, the local board unanimously voted to retain him in class 1–O. Three of the four members of the board gave no reason for their action. The fourth declared that his vote was "[b]ased on the evidence presented and the employment. * * *" Two weeks later, the Appeal Board affirmed the denial to appellant of a 4–D reclassification "because he is not devoting full-time to his ministerial duties. * * * effective November 1, 1953, he is working on a part-time basis [at a secular job]."

That a registrant engages in part-time secular work for subsistence purposes is not a "basis in fact" for denying him class 4–D status, if his religious activity is his primary and principal vocation. Dickinson v. United States, supra; United States v. Hurt, 3 Cir., 1957, 244 F.2d 46; Pate v. United States, 3 Cir., 1957, 243 F.2d 99; United States v. Ransom, 7 Cir., 1955, 223 F.2d 15; Brown v. United States, supra; Hacker v. United States, 9 Cir., 1954, 215 F.2d 575. Appellant's showing that, as of November 1, 1953, his primary and principal vocation was his pioneer assignment is without the slightest contradiction in the record.

I can see no basis in fact, therefore, for the board's refusal to classify him 4–D. His 20–25 hours per week of secular work is, to be sure, more than the few hours involved in Dickinson, but it is probably less than the time devoted to secular work by the registrant in Pate, supra.[1] What is significant is not the number of hours a week spent on secular work, but only whether, despite such secular work, appellant's religious activity is, as was said in Pate, 243 F.2d at page 102, "his vocation and life's work" and that he manages to perform that activity. There is no challenge in the record to appellant's declaration to the board that he was performing "full-time"[2] pioneer work and there is no suggestion that his part-time secular work precluded his doing the hundred hours per month of religious work which the trial judge found was required of a "pioneer."

There are overtones in the record suggesting that the local board may have been suspicious of appellant's good faith in dropping his full-time secular work and obtaining a pioneer appointment as soon as he was classified 1–O. But the record does not show that disbelief of appellant was the basis of the board's action. Nor can this court now defend the board's action on that basis. The Supreme Court said in Dickinson v. United States, 346 U.S. at pages 396–397, 74 S.Ct. at page 157:

"The court below in affirming the conviction apparently thought the local board was free to disbelieve Dickinson's testimonial and documentary evidence even in the absence of any impeaching or contradictory evidence. The court manifested its own skepticism by pointing to Dickinson's youth, the unorthodox method of ordination by baptism, the failure to present stronger documentary evidence from Watchtower Society leaders, and the customary claim of Jehovah's Witnesses to ministerial exemptions. * * *

* * * * * *

" * * * But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice."

Dealing with the type of suspicions which one or two members of appellant's draft board may have entertained, the Ninth Circuit said in Brown v. United States, 216 F.2d at pages 259–260, note 2:

"The members of this court, after hearing a number of similar cases, are not without curiosity as to whether nineteen year old Jehovah's Witnesses, about to be drafted, are customarily handed ministerial appointments. As put by Mr. Justice Jackson in his dissent in the Dickinson case (346 U.S. 389, 74 S.Ct. 158, [98 L.Ed. 132]); 'These events on the eve of his classification and in view of his youth may have raised doubt as to his good faith.' But even if a survey should show a general practice to make such appointments in a similar timely manner, the decision in the Dickinson case would make such a showing irrelevant."

If, under the statute as construed by the Supreme Court, ministerial exemption can be too easily acquired, only Congress can change the law. Applying the existing law to the case before us, I see no basis in fact for denying appellant the claimed exemption. I would therefore hold that he was entitled to a judgment of acquittal.

---

1. Pate operated a 40-acre farm to support himself. The dissenting judge called attention to testimony that Pate's secular work may have occupied more of his time than his religious activity. 243 F.2d at page 105.

2. At the trial appellant testified that he devoted 45 to 50 hours per week to his religious duties.