**UNITED STATES of America,**

v.

**William Henry BURLICH, Jr., Defendant.**

**No. 66 Cr. 387.**

United States District Court
S. D. New York.

July 26, 1966.

Robert M. Morgenthau, U. S. Atty., for the S. D. of New York, New York City, for the United States. Paul K. Rooney, Asst. U. S. Atty., of counsel.

Anthony F. Marra, New York City, for defendant. Bernard Moldow, New York City, of counsel.

WEINFELD, District Judge.

The defendant, charged with willful refusal to submit to induction into military service,[1] waived trial by jury pursuant to Rule 23 of the Federal Rules of Criminal Procedure. Upon conclusion of the trial the court reserved decision on the defendant's motion for a judgment of acquittal.

The essential fact that the defendant refused to take one step forward when he reported for induction on February 7, 1966 at the Armed Forces Induction Center in this district, after his acceptability for military service had been determined, is not in dispute. The case is somewhat unique in that the ground assigned by the defendant at the time of his refusal to submit to induction, that he is a conscientious objector, a classification which had been denied him, affords no basis for a defense since he never filed an appeal from the denial of that status.[2] Upon trial, however, he advanced a new defense—he challenged the validity of the induction order, contending that he was denied procedural due process when his local board refused to reopen his classification pursuant to Part 1625 of the Selective Service regulations[3] upon his petition for a dependency deferment alleging facts which came into existence subsequent to his 1–A classification.

The defendant registered with his local board on June 29, 1964, as required by section 3 of the Universal Military Training and Service Act.[4] He was single and lived with his widowed mother and a younger brother. He stated he had no dependents. On July 21 he was classified 1–A (available for military service). In November 1964, claiming conscientious objector status, he filed SSS Form No. 150, but the Board, after voting to reopen his 1–A classification, rejected his claim and again reclassified him 1–A. Although the reclassification afforded him the right to appeal,[5] he did not do so.

Thereafter he was ordered to and did appear on February 5, 1965 for pre-induction physical examination and was found acceptable for military service. He remained in this status until September 1965, when he was ordered to report for a second physical examination. He then wrote to his local board requesting a change in his 1–A classification upon the ground that since his first physical examination he had become the sole support of his mother and his younger brother. In response the Board mailed him a dependency questionnaire (SSS Form No. 118), which he completed and filed on October 15, 1965. The defendant, however, did not then submit, as the Board had requested, a physician's statement as to his mother's physical condition. His mother submitted her own statement to the effect that: "At the age of almost 50 I find it impossible to go to work & take care of household duties and the family." On November 16, 1965 an interview was granted the registrant at which he reiterated his mother's statement, adding thereto that his father had died when he was five years of age. Two days later he was advised by the Board that the facts submitted did not warrant a reopening and reconsideration of his classification.

The defendant and his mother continued their efforts to secure a dependency

---

1. 50 U.S.C. App. § 462(a).

2. See Estep v. United States, 327 U.S. 114, 123, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944).

3. 32 C.F.R. Part 1625.

4. 50 U.S.C. App. § 453.

5. See 32 C.F.R. §§ 1625.13, 1626.2.

classification. On November 22 she wrote to the Board that her son was a conscientious objector, that he was her main support and that she was unable to work because of extreme nervous exhaustion. She followed this up several days later with a substantially similar letter to the Department of Defense, but elaborated upon details, specifying that she had an income from Social Security of about $140 per month for herself and her minor son, which just about covered the monthly food bills, and that the essential support for the family came from the registrant. The Defense Department referred her letter to the New York City Selective Service headquarters, and as a result the registrant was granted another interview by his Board on December 14, when he appeared together with his mother. This time they submitted a statement from her physician setting forth her nervous condition, but the Board again determined that the defendant's 1-A classification would not be reopened and reconsidered.

█ On December 22, 1965 the registrant notified the Board he "would like to appeal" its decision. In response the Board, on January 19, 1966, stated that the evidence he had submitted did "not justify the reopening of your case and reconsideration of your present classification." He then wrote to the Board protesting its action, noting that at the interview of December 14, 1965 he was told that if after the interview the Board should decide not to reopen the case he could appeal, and concluded: "Would you please notify me as to why I was not given the right to appeal my case & why I was not given the right to personally defend my case at an appeal before the Board." This inquiry was answered by the Board on January 24 with a brief statement that the matter had been reviewed and "There was no evidence to warrant reopening your classification." Thus it appears that the registrant and the local board were not on the same wave length; one was seeking an appeal and the other was referring to lack of evidence to warrant reopening the classification.[6] At no time did the Board inform the defendant that its refusal to reopen foreclosed an appeal.[7] In any event, on January 25 the Board mailed the defendant an Order to Report for Induction on February 7. As already noted, he reported but refused to submit to induction.

The legal issue presented by defendant's challenge to the validity of the order for his induction falls within a very narrow compass—whether, upon the facts presented, the Board's refusal to reopen his classification with the consequent foreclosure of an appeal from the denial of the requested reclassification amounted to a deprivation of due process. In sum, the defendant's position is that he presented evidence sufficient to require the Board to grant a reopening, although had it done so he does not question that it would have had sufficient basis to refuse to grant his request. It should be stressed that the merits of the claim for a change of classification to a dependency status are not here involved.

██ A "local board may reopen and consider anew the classification of a registrant * * * [if presented with] facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification * * *."[8] Once the local board reopens, it is required to "consider the new information which it has received and shall again classify the registrant in the same manner as if he had never be-

6. "Registrants are not * * * to be treated as though they were engaged in formal litigation assisted by counsel." United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3d Cir. 1953).

7. See Stain v. United States, 235 F.2d 339, 343 (9th Cir. 1956). See also Townsend v. Zimmerman, 237 F.2d 376, 378 (6th Cir. 1956); Olvera v. United States, 223 F.2d 880, 883 (5th Cir. 1955); United States v. Scott, 137 F.Supp. 449, 454 (E. D.Wis.1956); Ex parte Fabiani, 105 F. Supp. 139, 148 (E.D.Pa.1952).

8. 32 C.F.R. § 1625.2.

fore been classified." [9] A classification following a reopening is in all respects a new and original one even though the registrant is placed in the same classification,[10] and "each such classification shall be followed by the same right of appearance before the local board and * * * of appeal as in the case of an original classification." [11] The regulations further provide, though, that a local board need not reopen if it is of the opinion that no new facts are presented or "that such facts, if true, would not justify a change in such registrant's classification * * *." [12] Following a refusal to reopen, a registrant has no right to a personal appearance or to an appeal.[13] Thus, whether or not the registrant is granted a reopening even though his original classification may be adhered to is a matter of substance, since it automatically carries with it a right of personal appearance and appeal.

When a registrant under the Selective Service regulations seeks a different classification based upon a change of facts not previously presented, the Board is called upon to make two separate and distinct determinations: (1) whether the registrant has presented prima facie evidence which requires the Board to reopen his case and to inquire into the merits of the requested change of classification, and, if so, (2) whether upon such consideration of the merits of his claim he is entitled to the requested classification.

▆ The regulations themselves contain no standards to guide the Board in making the initial determination wheth-er to reopen other than the provision that it shall not reopen if in its "opinion" the new facts would not justify a change in the registrant's classification. While this discretion is exceedingly broad, it is not without its limits. The Board may not act arbitrarily or capriciously or refuse fair consideration based upon the newly presented facts.[14] As our Court of Appeals has put it in a leading case considering the reopening section of the regulations:[15]

"Though the language in the regulation is permissive merely that does not mean that a local board may refuse to reopen arbitrarily, but requires it to exercise sound discretion. That, in turn, requires, when the basis of an application is not clearly frivolous, an inquiry designed to test the asserted facts sufficiently to give the board a rational base on which to put decision."

Other courts have also held that despite the broad discretion vested in the Board, there are circumstances which do require reopening. Thus, it has been held that a local board must "consider anew the classification of a registrant who reports, within 10 days after it occurs, a change in his status which may require his reclassification," [16] and that failure to do so is a deprivation of an important procedural right.[17] Or, as another court has explained, when a registrant presents new facts which make out a prima facie case for a new classification, the local board must reopen to determine whether the registrant is entitled to the requested classification.[18]

9. 32 C.F.R. § 1625.11.

10. 32 C.F.R. § 1625.11.

11. 32 C.F.R. § 1625.13. Accord, United States v. Vincelli, 215 F.2d 210, 213, rehearing denied, 216 F.2d 681 (2d Cir. 1954).

12. 32 C.F.R. § 1625.4.

13. See United States v. Vincelli, 215 F.2d 210, 213, rehearing denied, 216 F.2d 681 (2d Cir. 1954).

14. Olvera v. United States, 223 F.2d 880, 882 (5th Cir. 1955); United States ex rel. Berman v. Craig, 207 F.2d 888, 890 (3d Cir. 1953).

15. United States v. Vincelli, 215 F.2d 210, 212–213, rehearing denied, 216 F.2d 681 (2d Cir. 1954).

16. United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3d Cir. 1953).

17. *Ibid.*

18. Stain v. United States, 235 F.2d 339, 342 (9th Cir. 1956). Accord, Townsend v. Zimmerman, 237 F.2d 376, 377 (6th Cir. 1956); Brown v. United States, 216 F.2d 258, 260 (9th Cir. 1954).

The sum and substance of these cases, however phrased, is that the rule announced in the Dickinson [19] and Estep [20] cases, requiring a basis in fact for the Board's original classification, is equally applicable to the action of the Board in determining whether or not changed conditions justify a reopening of a registrant's classification and consideration of his claim for a different classification.[21] As one court put it: "The local board should not be able to escape the requirement of a basis in fact by simply refusing to reopen a registrant's file and consider it further." [22]

When the newly presented facts upon which a registrant seeks a change of classification are not frivolous and present a prima facie case for a requested deferment, a refusal by the Board to reopen his case so as to consider the merits of his claim constitutes a denial of procedural due process,[23] since at once it denies the registrant the opportunity of personal appearance before the Board with the right to make a statement, to point out in what respect he believes they erred and what they overlooked, and to present any additional information to assist the Board in determining his proper classification,[24] and at the same time effectively forecloses an appeal from its determination.

■ Thus we reach the issue of whether the defendant presented to the Board a prima facie case for a 3–A dependency classification. A prima facie case is made out if a registrant has presented facts which, if true and uncontradicted by other information contained in his file, would be sufficient under the regulations to warrant granting his requested classification.

■ The relevant regulation, 32 C.F.R., section 1622.30(b) provides: "In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship (1) to his * * * parent * * * [or] brother * * * who is dependent upon him for support, * * *." Accordingly, to establish a prima facie case the registrant must present proof not only that he makes a substantial financial contribution to a dependent listed in the regulation, but also that the dependent, if deprived thereof, would suffer extreme hardship. The defendant showed that since his 1–A classification his mother, who had been working up to seven months before the request for change of classification and had been the main support of the family, had been compelled to give up her employment because of her physical condition; that she was receiving from Social Security $140 per month, which was inadequate to provide for the family; [25] that he contributed about $60 per week for the family support, almost two-thirds of the total 'fam-

19. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

20. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423 (1946).

21. See United States v. Ransom, 223 F.2d 15, 17 (7th Cir. 1955); United States v. Scott, 137 F.Supp. 449, 453 (E.D.Wis. 1956).

22. United States v. Ransom, *supra* note 21, 223 F.2d at 17.

23. See Stain v. United States, 235 F.2d 339, 343 (9th Cir. 1956); Olvera v. United States, 223 F.2d 880 (5th Cir. 1955); United States v. Vincelli, 215 F.2d 210, 213, rehearing denied, 216 F.2d 681 (2d Cir. 1954).

24. Cf. 32 C.F.R. § 1624.2(b).

25. B.L.S. statistics indicate that, during the latter part of 1965 when defendant's case was before the local board, approximately $4960 per year was needed, after deductions for payment of income and personal taxes and occupational expenses, to support a family of three at a " 'modest but adequate' level of living" in the New York metropolitan area, while about $3765 was needed for a family of two. See U. S. Dep't of Labor, The Interim City Worker's Family Budget, in Monthly Labor Review, vol. 83, p. 785, at 786–88, Aug., 1960; U. S. Dep't of Labor, Consumer Price Index for New York, New York, Series A–01 (reflecting cost of living adjustments to 1965). Defendant's mother received $1680 per year in Social Security for the support of herself and her minor son; defendant contributed about $3120 per year in addi-

ily income—indeed, all of its support after the payment of the rent. The evidence offered also indicated that the income provided by the registrant could not readily be replaced, since his mother's physical condition made it difficult for her to resume her work and there was no other available source of family income. These facts were of substance and clearly established a prima facie case of change in status, requiring the Board to reopen the registrant's case to determine whether his new status required reclassification.[26] Nothing contained in the file negatived the defendant's averments in support of his claim, and the file indicates no basis in fact for the Board's refusal to reopen. This, of course, is not to say that had a reopening been granted the Board, in its determination upon the merits of defendant's claim, would not be justified in again classifying him 1–A since it might have, for example, rejected his contention that his mother's physical condition did not permit her to work and to continue to provide the main family income as she had up to seven months before the application for reclassification had been made. But the Board's rejection of the registrant's basic claim for reclassification, even though it may have been justified, cannot justify its refusal to reopen since he did make out a prima facie case.

 The government stresses that the defendant was granted discretionary

interviews after he had filed for dependency deferment. But such interviews are no substitute for the procedural right of appearance before the Board.[27] By the refusal of reopening, the defendant was deprived of the opportunity to explain his case to the members of the Board and to bring to their attention additional evidence in support of his application, a right guaranteed by the reopening regulation, and "obviously of the greatest value to the registrant even though he has no new information to present. * * * "[28] Moreover, had a reopening been granted, not only would the defendant have been entitled to appear personally before the Board but, even had he again been classified 1–A, he would also have been entitled to an administrative appeal from the denial of his dependency deferment claim. Thus, the court concludes that the defendant having made out a prima facie case for a 3–A classification, the Board's refusal to reopen his classification deprived him of his right of personal appearance before the Board and of his right to an administrative appeal, and hence of due process, in consequence of which the order for his induction is invalid.[29]

 The government urges, apparently on a theory of waiver, that when the defendant refused to comply with the induction order he stated as the basis of his refusal that he was a conscientious objector and made no reference to the

tion to the family's support. Thus, taking into account the defendant's aid, the family of three had an income of $4800, slightly below the B.L.S. figure. If defendant were inducted, the dependency allowance in his instance would be $480 per year. See Army Reg. AR 37–104. Thus, the amount available for the mother and brother would be $2160, approximately $1600 short of the B.L.S. statistic of $3765 required for an adequate level of living for a family of two.

26. Cf. Townsend v. Zimmerman, 237 F.2d 376, 377 (6th Cir. 1956); Stain v. United States, 235 F.2d 339, 342 (9th Cir. 1956); United States v. Vincelli, 215 F.2d 210, 212–213, rehearing denied, 216 F.2d 681

(2d Cir. 1954); United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3d Cir. 1953).

27. See 32 C.F.R. Part 1624; Selective Service System, Local Board Memorandum No. 52, Jan. 14, 1953. Cf. United States v. Romano, 103 F.Supp. 597, 598–600 (S.D.N.Y.1952).

28. United States v. Stiles, 169 F.2d 455, 458 (3d Cir. 1948). Accord, Davis v. United States, 199 F.2d 689, 691 (6th Cir. 1952).

29. United States v. Vincelli, 215 F.2d 210, 213, rehearing denied, 216 F.2d 681 (2d Cir. 1954); Knox v. United States, 200 F.2d 398, 401 (9th Cir. 1952).

failure of the Board to grant him dependency deferment. However, since the induction order was invalid, it mattered not what reason was assigned, and there is no basis to support the claim of waiver.[30]

Accordingly, the defendant is acquitted.

30. When a Board improperly refuses to reopen and reconsider a defendant's classification, "the board's orders to the defendant subsequent to its refusal * * * [are] a nullity, and the defendant's refusal to obey such orders [does] not constitute a violation. * * *." United States v. Henderson, 223 F.2d 421, 424 (7th Cir. 1955). See also the cases cited in note 29 *supra*. Nor can the defendant herein be charged with failing to exhaust administrative remedies, since no such remedies exist following a denial of a reopening. Cf. United States v. Scott, 137 F.Supp. 449, 454–55 (E.D.Wis.1956). See also Townsend v. Zimmerman, 237 F.2d 376, 378 (6th Cir. 1956); Stain v. United States, 235 F.2d 339, 343 (9th Cir. 1956); United States v. Vincelli, 215 F.2d 210, 213, rehearing denied, 216 F.2d 681 (2d Cir. 1954).