**UNITED STATES** ex rel. Andrew VELL-RATH, Petitioner, R. D. 2, Landenberg, Pennsylvania,

v.

Thomas M. VOLATILE, Commanding Officer, Armed Forces, Examining Entrance Station, 401 North Broad Street, Philadelphia, Pennsylvania,

and

Secretary of Defense, The Pentagon, Arlington, Virginia.

Civ. A. No. 70–199.

United States District Court,
E. D. Pennsylvania.

Feb. 6, 1970.

Richard A. Axelrod, of Shuman, Denker & Land, Philadelphia, Pa., for petitioner.

L. C. Bechtle, U. S. Atty., Philadelphia, Pa., for respondents.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is a petition for a writ of habeas corpus filed by Andrew Vellrath against Thomas M. Volatile, Commanding Officer of the Armed Forces Examining Entrance Station in Philadelphia, and the Secretary of Defense wherein petitioner seeks release from military custody.[1] Petitioner contends that his order to report for induction is void thereby making his custody illegal. In essence, petitioner's argument is that his Local Board (Local Board No. 46, Coatesville, Pennsylvania) failed to reopen his classification on May 20, 1969, when evidence was presented by his employer, E. I. DuPont de Nemours, Inc. in support of a claimed 11-A occupational deferment.

We granted a temporary restraining order on January 20, 1970, to insure petitioner's presence and his opportunity to consult with counsel at a plenary hearing. From the testimony of Edward R. McCarraher, Executive Secretary of Local Board No. 46, and from petitioner's Selective Service file, the following sequence of events appears:

Petitioner received 11-S student deferments for his undergraduate and graduate study in industrial design and when his formal education was completed, he was classified 1-A on June 19, 1968. Petitioner requested and received a personal appearance before the Local Board at which he sought a 11-A occupational deferment by reason of his employment with Display House, Inc., as an industrial designer. The Local Board considered the request along with information provided by petitioner's then employer and denied the deferment on September 16, 1968. Petitioner was thereafter ordered to report for induction. However, the orders were subsequently cancelled to allow petitioner an appeal.[2] After a recommendation by the Pennsylvania Scientific Advisory Committee [3] that petitioner should not be deferred, petitioner's entire file was forwarded to the State Appeal Board on February 10, 1969.[4]

While the appeal was pending, the Local Board received notice from petitioner by letter on February 11, 1969, stating that he had changed his employment by accepting a job with E. I. DuPont de Nemours, Inc. (DuPont) of Wilmington, Delaware. DuPont confirmed the fact of petitioner's employment and requested a 11-A deferment on February 17, 1969. On March 3, 1969, the Pennsylvania Appeal Board affirmed the Local Board's decision concerning petitioner's prior employment and continued his 1-A clas-

---

1. Petitioner has reported for active military service pursuant to an order to report for induction issued on December 26, 1969.

2. Petitioner filed a timely request for an appeal on October 14, 1968. However, Local Board 46 misplaced the letter. The Local Board petitioned and received approval from State Selective Service headquarters to permit an appeal under the circumstances.

3. The Scientific Advisory Committee serves as an advisor on occupational deferment claims and may recommend no deferment (non-essential) or deferment for periods of either 6, 9 or 12 months (essential).

4. The correctness of the Local Board's actions prior to May 20, 1969 has not been contested and we therefore express no opinion on whether any procedural errors were committed prior to that date.

sification. On March 11, 1969, the Local Board responded to DuPont's letter of February 17, 1969, advising that after a review of Vellrath's file and DuPont's letter, the Board could not find sufficient new information therein to justify a change in classification. This letter crossed in the mails with a letter from DuPont, also dated March 11, 1969, which further outlined its need for petitioner's services and requested an appeal to the Delaware Appeal Board. The Local Board responded on March 14, 1969, and advised DuPont that Vellrath had no further right to appeal from the Pennsylvania Appeal Board's decision, but added that "the Board will take into consideration any additional new information which you wish to submit to justify the Board granting a change in his present 1–A classification".[5] Thereafter, at the Board's request, DuPont completed the Revised Occupational Inquiry Form SSSP–1674 which was then forwarded to the Delaware Scientific Advisory Committee for its recommendation on Vellrath's job with DuPont. The contents of Form SSSP–1674 indicate that petitioner was involved in work on a moisture analyser, automatic clinical analyser and luminescence biometer and that these instruments were used by government, industry and universities in the field of pathology and health in general. DuPont further noted the need for petitioner's services in that he approved all changes in design in these instruments and in other new instruments and was considered by DuPont as an irreplaceable employee. Having considered this information, the Delaware Scientific Advisory Committee on May 8, 1969, recommended that petitioner be deferred for a period of nine months upon its opinion that his job with DuPont was "essential".[6] The official minutes of the Local Board indicate that these documents were reviewed by the Board on May 20, 1969,[7] and pursuant to the Board's instructions, the executive secretary forwarded petitioner's entire file to the Delaware Appeals Board which on May 26, 1969, voted 3–0 to continue petitioner's 1–A classification. No notice of the Board's *sua sponte* action in forwarding petitioner's file to the Appeal Board was sent to petitioner on May 21, 1969, nor was he notified of the Board's negative action upon his request for reopening as is required by the Selective Service Regulations.[8] Subsequently, on June 5, 1969, DuPont communicated with the State Selective Service Director further indicating its difficulty in finding a man with petitioner's qualifications and its judgment that he was irreplaceable. The State headquarters indicated to the Local Board by letter that the Local Board would be proper in reviewing DuPont's letter of June 5 to determine if a change in classification was

---

5. See Exhibit R–1, petitioner's Selective Service file.

6. It should be noted that the opinions of the Advisory Committee are not binding upon the Local Board.

7. The testimony of Mr. McCarraher and the exhibits bear out the fact that the Board kept two official copies of its minutes, one public and the other confidential. The public minutes which were the only ones shown to petitioner do not disclose whether petitioner's files, DuPont's requests or the Scientific Advisory Committee's recommendations were ever considered by the Board as his name appears nowhere in these minutes. The "confidential" minutes, however, contain the following notation under the heading of "other local board minutes":

"The following files were reviewed by the board, and the Ex. Sec'y. was instructed to send the files to the State Appeal Board as requested by the registrants.

  *     *     *     *     *

36–46–44–703        Vellrath, Andrew" The original petition alleges, *inter alia*, that the Local Board failed to consider petitioner's file. This allegation, in light of the above facts, was withdrawn at oral argument.

8. 32 CFR § 1625.4 requires the Board, upon determining not to reopen a registrant's classification, to notify the person requesting the reopening by letter, a copy of which shall be placed in the registrant's official file.

warranted [9] and postponed induction until this was done. On June 23 petitioner was again ordered to report for induction and while this order was outstanding, the Local Board met personally with two DuPont representatives. The file was not reopened after this interview.[10] However, petitioner's induction was again postponed to allow a Presidential appeal. On December 9, 1969, the Presidential Board voted 3–0 to maintain petitioner's classification at 1–A and pursuant thereto petitioner was ordered to and did report for induction on January 20, 1970.

The pertinent Selective Service regulation relevant to the issues here presented provides in relevant part that

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances beyond his control." 32 CFR § 1625.2.

A literal reading of Section 1625.2 would give unlimited discretion to local draft boards. However, the cases construing this regulation have consistently held that where a registrant presents evidence creating a prima facie case for a new draft classification the Local Board is required to reopen the classification.[11]

■ What is crucial to the concept of reopening a classification is "classification anew". When a local draft board reopens and reconsiders a registrant's classification it then classifies him anew with the result that he is thereafter entitled to every procedural consequence which attaches to an initial classification, i. e., the registrant now has the same rights to a personal appearance and appeal that he had at the time of his initial classification. See 32 CFR § 1625.11–13. Included within these rights are also the rights to new notices and additional advice from a government appeals agent. The fact that a draft board reopens and reconsiders a registrant's classification does not necessarily mean he will be granted a requested new classification; it does, however, mean that he will be reclassified and accorded the full rights we have just mentioned.

■ We must at the outset note that the scope of judicial review in Selective

---

9. The import of this letter expresses in effect a suggestion by the State Board that reopening on the facts in petitioner's file was a proper Local Board course of action.

10. The Selective Service regulations do not permit a Local Board to reopen a classification after the registrant is subject to an Order to Report for Induction unless the Local Board first specifically finds that there has been a change in the registrant's status resulting from circumstances beyond his control. 32 CFR § 1625.2. At this point, therefore, the the Board did not have the power to reopen petitioner's classification, but, rather, was specifically prohibited from so doing.

11. United States ex rel. Berman v. Craig, 207 F.2d 888 (3rd Cir. 1953); Stain v. United States, 235 F.2d 339 (9th Cir. 1956); Miller v. United States, 388 F.2d 973 (9th Cir. 1967); United States v. Grier, 415 F.2d 1098 (4th Cir. 1969); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); Olvera v. United States, 223 F.2d 880 (5th Cir. 1955); United States v. Walsh, 279 F.Supp. 115 (D. Mass.1968); United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966).

Service cases is limited to whether there is "basis in fact" for the Board's decision. See Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U. S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). This test, first applied to classifications by the Board is equally applicable to Board determinations of whether or not new facts justify reopening a registrant's classification. United States v. Ransom, 223 F.2d 15, 17 (7th Cir. 1955); United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966); United States v. Scott, 137 F.Supp. 449, 453 (E.D.Wis.1956). However, "[b]ecause the judicial review of administrative decisions made under the Selective Service laws is severely limited, in the interest of basic fairness, it is essential to the validity of Local Board orders that every procedural requirement be strictly and faithfully followed." United States v. Shaifer, No. 68 CR 467 (N. D.Ill. Feb. 25, 1969). See also Olvera v. United States, 223 F.2d 880, 882 (5th Cir. 1955); United States v. Freeman, 338 F.2d 246, 248 (7th Cir. 1968). Furthermore, in this very connection one Court has aptly stated:

> "When the newly presented facts upon which a registrant seeks a change of classification are not frivolous and present a prima facie case for a requested deferment, a refusal by the Board to reopen his case so as to consider the merits of his claim constitutes a denial of procedural due process, since at once it denies the registrant the opportunity of personal appearance before the Board with the right to make a statement, to point out in what respect he believes they erred and what they overlooked, and to present any additional information to assist the Board in determining his proper classification, and at the same time effectively forecloses an appeal from its determination." (Footnotes omitted) United States v. Burlich, *supra*, 257 F.Supp. at 911.

We have carefully considered the testimony and petitioner's Selective Service file and find that Local Board No. 46 was under a duty to reopen petitioner's then 1–A classification and that the Board's action on May 21, 1969, in failing to do so and in certifying petitioner's file *sua sponte* to the Delaware Appeal Board constituted a denial of petitioner's right to a personal appearance and consequently a denial of procedural due process.

The regulation governing 11–A classification provides that a registrant shall be deferred where the occupation involved is necessary to the maintenance of the national health, safety, or interest. 32 CFR § 1622.22. Necessary employment is determined by a consideration of whether the registrant is presently engaged in such an occupation, whether there is a shortage of persons with registrant's skills or qualifications and whether his removal would cause material loss of effectiveness in such activity. 32 CFR § 1622.23. The matters related to the Local Board in DuPont's letters of February 17, 1969, and March 11, 1969, in addition to the information provided by DuPont in Occupational Inquiry Form SSSP–1674 indicated that petitioner was engaged in work related to national health. Additionally, these documents pointed up facts indicating that petitioner was a highly skilled employee whose services were difficult to obtain and that due to the nature of his responsibilities he was vital to his activity. This we believe created a prima facie case for reopening petitioner's status.[12] The Local Board's actions in certifying petitioner's Selective Service file directly to the Delaware Appeal Board on May 21, 1969, without reopening his classification based on the new facts presented, was an abuse of discretion by the Local Board which denied petitioner procedural due process by denying him a right to personally appear before the Board.

12. We, of course, express no opinion on the merits of petitioner's classification.

The government has argued that even if the Board abused its discretion in failing to reopen petitioner's case on May 21, 1969, nevertheless, petitioner was not prejudiced by the Board's error because the Board certified petitioner's file directly to the Delaware Appeal Board. It is further argued that this appellate de novo review as well as a later Presidential appeal have given petitioner more than he was entitled to under the Selective Service Regulations.[13]

■ First of all, by certifying petitioner's file to the Appeal Board, the Local Board, while it may have given petitioner an appeal, it most certainly did not afford him his right to personally appear before the Local Board and make a statement. The right to a personal appearance cannot be deemed an inconsequential one especially since it is specifically conferred by the Selective Service regulations themselves. 32 CFR 1624.1.

The purpose and importance of a personal appearance are well illustrated by the language of the regulation itself which reads in relevant part:

"(b) At any such appearance, the registrant may discuss his classification, may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file which he believes the local board has overlooked or to which he believes it has not given sufficient weight. The registrant may present such further information as he believes will assist the local board in determining his proper classification." * * * 32 CFR § 1624.2.

The opportunity to discuss his new job and the responsibilities it entailed, as well as the chance to assess the Local Board's error, if any, has been taken away from petitioner by the Board's unilateral certification of petitioner's record to the Appeal Board. Furthermore, a personal appearance may well have disclosed material for petitioner's statement to the Appeal Board which he otherwise would not have discovered and included. See United States v. Stiles, 169 F.2d 455, 459 (3rd Cir. 1948).

■■ The government has also contended that de novo review of petitioner's file by the Delaware Appeal Board and a Presidential Appeal Board has cured and eliminated any prejudice which may have resulted from the Local Board's action on May 21, 1969. We do not agree. First of all, a prima facie case for reopening was presented to the Board by petitioner which was *uncontradicted* factually. The Local Board's determination not to reopen his classification was without basis in fact. In such circumstances, the Local Board acted beyond its jurisdiction, Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Niznik v. United States, 173 F.2d 328, 336 (6th Cir. 1949), and subsequently their action could not be legally affirmed on appeal.[14] Furthermore, de novo consideration of the registrant's classification cannot cure the denial of procedural due process which deprived petitioner of his right to a personal appearance. See United States v. Shaifer, No. 68 CR 467 (N.

---

13. The gist of this argument is that petitioner was not entitled to appeal from a Board decision not to reopen his case and that the Board's action in giving him an appeal gave petitioner "extra" rights. We cannot accept this argument in light of our finding that a prima facie case for reopening was presented by petitioner. Having a prima facie case before it, the Board was under a duty to reopen petitioner's classification and classify him anew. Thereafter, he was entitled to a personal appearance.

14. Furthermore, under the Selective Service regulations, petitioner is entitled to an appeal within 30 days of his classification. 32 CFR § 1626; 32 CFR § 1625.-13. By certifying his file directly to the Appeal Board the Local Board did not afford petitioner the required 30 days within which to prepare for appeal. (The Appeal Board's decision was made on May 26, 1969)

D.Ill. Feb. 25, 1969); Niznik v. United States, 173 F.2d 328 (6th Cir. 1949).

In consideration of the foregoing, we will grant petitioner's request for a writ of habeas corpus. We do so without prejudice to any further rights the government may lawfully have within the Selective Service system.