**David J. KURJAN**

v.

**LOCAL BOARD NUMBER 58 and Commanding Officer, Commander Thomas M. Volatile, Armed Forces Examining and Entrance Station and Secretary of Defense.**

**Civ. A. No. 69-2647.**

United States District Court,
E. D. Pennsylvania.

June 16, 1970.

John David Egnal, Egnal & Egnal, Philadelphia, Pa., Read Rocap, Media, Pa., for plaintiff.

Merna Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

MASTERSON, District Judge.

Presently before us is a petition for a Writ of Habeas Corpus.* The petitioner, David Jeffrey Kurjan, submitted to induction into the Armed Forces of the United States on November 7, 1969. On that day, after considering the verified petition, we issued an Order restraining the respondents and their agents from removing the petitioner from the jurisdiction of this Court. We further ordered the respondents to show cause why the Writ ought not issue and a hearing for this purpose was scheduled for November 17, 1969. As a result of this hearing, we preliminarily enjoined the respondents from removing the petitioner from our jurisdiction pending our further order. After reviewing the petitioner's Selective Service File, we make the following findings of fact and conclusions of law:

## FACTS

The petitioner has been registered in the Selective Service System since December 31, 1962. He has received II–S student deferments which have allowed him to complete his undergraduate training at the University of Pennsylvania, from which he received a Bachelor's Degree in Electrical Engineering in May, 1967. The petitioner then embarked upon a course of graduate study at the Moore School of Electrical Engineering at the University of Pennsylvania. His II–S student deferment was continued until June 18, 1968, when he was reclassified I–A because of a change in the statute and regulations regarding graduate students.

On July 15, 1968, The University of Pennsylvania requested that Kurjan be given a II–A classification (occupational deferment). The letter supporting the request indicated that Kurjan was a research assistant doing graduate work part-time while devoting the majority of his time to research and development. The project to which the petitioner was assigned was being carried out for the Electronics Command of the United States Army and involved research on improving the intelligibility of voice communications systems in helicopters. The time spent on the research carried no credits towards his Master's Degree but enabled Kurjan to receive a National Science Foundation fellowship, which carried a yearly stipend of $2,200 plus tuition. On the basis of this information, the Local Board reopened and considered anew Kurjan's I–A classification but decided to retain that classification.

The petitioner was duly notified of this action and elected to exercise his right to a personal appearance before the Board. He appeared before the Board on October 7, 1968, and notified them that he had received his Master's Degree of Science in Engineering in August, 1968, and that he was now working towards his Ph.D. Kurjan also reported that he was working about 30 hours per week on the project, for which he was receiving credit towards his Ph.D. Apparently because they determined that Kurjan was not a full-time employee, the Board, without reopening, decided to re-

* Our jurisdiction is founded on 28 U.S.C. § 2241.

tain his I–A classification. (See Notes of Personal Appearance before Local Board on October 7, 1968). Both Kurjan and the University of Pennsylvania appealed this ruling.

The Local Board then sought an advisory opinion from the State Scientific Advisory Committee as to the "essential" nature of the petitioner's employment.[1] The Advisory Committee returned the file and requested further information, to wit, whether Kurjan was a graduate student. After being advised that Kurjan was pursuing a course of graduate study,[2] and after reviewing the Occupational Inquiry Form (SSSP–1674, dated December 2, 1968) which listed no salary being paid Kurjan for his research, the State Selective Service Headquarters, on February 13, 1969, returned the file to the Local Board without referring it to the Advisory Committee because State Headquarters had determined that "[T]his man's occupation does not come within the purview of the Scientific Advisory Committee."

The file was then sent to the Appeal Board which, on March 3, 1969, voted 3–1 to classify Kurjan I–A. After receiving notice of the Appeal Board's action, and *prior* to receiving his order to report for induction, the petitioner requested his superiors at the Moore School to change his status from that of a graduate trainee to a full-time salaried research assistant. On March 19, 1969, Kurjan received his orders to report for induction.[3] On April 1, 1969, the petitioner was notified by the Moore School that his request had been granted and that, as of that date, Kurjan was to be a salaried employee of the Moore School and no longer a graduate trainee receiving a stipend from the National Science Foundation. Kurjan wrote his Board on

April 3, 1969, timely advising them of the change in his status and requesting a personal interview to present the new information. The interview was held on April 17, 1969, at which time Kurjan told the Board that he was now a salaried employee. The petitioner also presented a letter, dated April 16, 1969, from Dr. Fred Haber, an Associate Professor at the Moore School, which confirmed the change in Kurjan's status as well as noting that Kurjan was solely responsible for the Avionics project, that he "would be very difficult to replace, and there would be a substantial loss (6 months to a year) in the development of the project." On the basis of these new facts, both Kurjan and his employer requested that the classification be reopened and that the petitioner be granted an occupational deferment (II–A).

On April 25, 1969, the Local Board sent the file to the State Board and requested a "decision or ruling" from them on the basis of the new information presented at the April 17, 1969 interview. On April 28, 1969, the State Board replied: "We concur with the I–A classification given this registrant by the local board and appeal board. In our opinion, this registrant *is still primarily a graduate student* and the induction order should remain in effect * * *" (emphasis supplied).

On May 20, 1969, by a vote of 4–0, the Local Board determined that the "information submitted does not warrant reopening classification." However, the Board felt that, *"before final decision"*,[4] a recommendation from the State Scientific Advisory Committee should be obtained as well as a statement from the University of Pennsylvania concerning the petitioner's salary. In addition, the Board mailed another Occupational In-

---

1. The Pennsylvania Scientific Advisory Committee serves as an advisor to the Local Board on occupational deferment claims. The Committee first determines whether a particular occupation is "essential" and, if it deems it "essential", may recommend deferment for periods of either 6, 9 or 12 months.

2. See SSS Form 103, dated February 10, 1969.

3. On March 27, 1969, the Board agreed to postpone the induction until the end of the school semester.

4. Local Board Minutes of May 20, 1969 meeting.

quiry Form to the University and obtained a further postponement of induction.

On May 21, 1969, the University informed the Board that Kurjan's annual salary was $4,000.00, with the explanation that "this person's graduate program is taken into consideration in determination of his salary and * * * the salary does not completely reflect the stature and importance of his work." The Occupational Inquiry Form[5] merely stated that Kurjan was "involved" in acoustical research relating to military helicopters and made no mention of his salary. After reviewing this form and related data, the Scientific Advisory Committee, on July 22, 1969, recommended that petitioner's occupation be designated "non-essential." On July 25, 1969, the Local Board determined that the information submitted did not warrant reopening. The minutes of that meeting also reflect that the Board agreed with the recommendation of the Scientific Advisory Committee.

On July 30, 1969, the Board again postponed induction and sent yet another Occupational Inquiry Form to the University of Pennsylvania. This Form, which was returned to the Board on August 5, 1969, was far more thorough and emphatic than the one previously submitted. For example, it stated that Kurjan had "sole" responsibility for the project and possessed unique talents that made him currently irreplaceable. It is repeated that Kurjan is devoting full time to the project and it is also stated that his salary has been raised to $7,000 per year. The Local Board then sent the file to the Scientific Advisory Committee. Presented with this new information, the Scientific Advisory Committee, on September 18, 1969, declared that Kurjan's employment was "essential" and recommended a twelve month deferment. However, on October 21, 1969, the Local Board declined to follow this recommendation and by a vote of 4–1 decided against reopening the classification. In a letter from the Board, dated October 22, 1969, Kurjan was advised that the Local Board had reviewed and considered the entire file "and *they feel that there is no change in your status.*" (emphasis supplied). Kurjan was later notified to report for induction on November 7, 1969, and he so complied. Then followed the instant petition for a Writ of Habeas Corpus.

### ISSUES

Petitioner's claims are that (1) assuming that the Board did not in fact reopen and consider anew his classification on May 20, 1969 and thereafter,[6] such failure to reopen was unlawful and denied the petitioner his right to due process; and alternatively, (2) the Local Board, by its actions, did in fact reopen his classification, a consequence of which petitioner was entitled to a personal appearance and a right of appeal, and that the denial of these procedures violated the petitioner's right to due process and, as such, the order to report for induction was invalid.

### I. "BASIS IN FACT" TEST

The applicable scope of judicial review of draft classifications by a Local Board is set out in 50 U.S.C.App. § 460(b) (3). In pertinent part, this section reads as follows:

"No judicial review shall be made of the classification or processing of any registrant * * * except * * * after the registrant has responded affirmatively or negatively to an order to report for induction * * * Provided, that such review shall go to the question of the jurisdiction herein reserved to the local boards, appeal boards, and the President only when

5. See Form SSSP–1674, dated June 19, 1969.

6. The Local Board considered petitioner's request for reopening of the classification on three separate occasions after the order to report for induction was mailed. The Local Board denied these requests on May 20, 1969, July 25, 1969, and October 21, 1969.

there is no basis in fact for the classification assigned to such registrant."

■■ As this section has been interpreted, a court can review a classification when there is no "basis in fact" for the classification or when the Local Board has acted arbitrarily and thus denied the registrant due process of law. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Parrott v. United States, 370 F.2d 388 (9th Cir. 1966), cert. denied, Lawrence v. United States, 387 U.S. 908, 87 S.Ct. 1690, 18 L. Ed.2d 625 (1967). The "basis in fact" test applies both to classifications by the Local Board as well as Board determinations of whether or not reopening of a registrant's classification is warranted by the presentment of new facts. United States v. Ransom, 223 F.2d 15, 17 (7th Cir. 1955); United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y. 1966); United States v. Scott, 137 F. Supp. 449, 453 (E.D.Wis.1956).

■ In the case at bar, petitioner asks this Court to review his Local Board's failure to reopen and consider anew his classification.[7] The complained of failures to reopen occurred *after* Kurjan received his notice to report for induction. In such circumstances, the applicable regulations are as follows:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form 252) * * * *unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.*" 32 C. F.R. § 1625.2. (emphasis supplied).

"When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required." 32 C.F.R. § 1625.4.

■ At first blush, the language of Section 1625.2 would seem to repose unfettered discretion in local draft boards. However, the courts, in interpreting this regulation, have held that where a registrant presents evidence creating a *prima facie* case for a new draft classification the Local Board is *required* to reopen the classification. United States ex rel. Berman v. Craig, 207 F.2d 888 (3rd Cir. 1953); Stain v. United States, 235 F.2d 339 (9th Cir. 1956); Miller v. United States, 388 F.2d 973 (9th Cir. 1967); United States v. Grier, 415 F.2d 1098 (4th Cir. 1969); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); Olvera v. United States, 223 F.2d 880 (5th

---

7. We note that this Court must confine its review to the evidence which the Board acted upon, *i. e.*, that information contained in petitioner's Selective Service

File. Cox v. United States, 332 U.S. 442, 455, 68 S.Ct. 115, 92 L.Ed. 59 (1947).

Cir. 1955) ; United States v. Walsh, 279 F.Supp. 115 (D.Mass.1968) ; United States v. Burlich, 257 F.Supp. 906 (S.D. N.Y.1966).

The significance which attaches to a Local Board's determination to "reopen" or not has been described as follows :

> "What is crucial to the concept of reopening a classification is 'classification anew'. When a local draft board reopens and reconsiders a registrant's classification it then classifies him anew with the result that he is thereafter entitled to every procedural consequence which attaches to an initial classification, i. e., the registrant now has the same rights to a personal appearance and appeal that he had at the time of his initial classification. See 32 C.F.R. § 1625.11–13. Included within these rights are also the rights to new notices and additional advice from a government appeals agent. The fact that a draft board reopens and reconsiders a registrant's classification does not necessarily mean he will be granted a requested new classification ; it does, however, mean that he will be reclassified and accorded the full rights we have just mentioned." United States ex rel. Vellrath v. Volatile, et al., 308 F.Supp. 1025 (E.D.Pa.1970).

■■ As noted above, before a Local Board can reopen and consider anew a classification after an order to report for induction has been mailed, they must first specifically find that "there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F. R. § 1625.2. In our case, the Local Board's only finding on October 21, 1969,[8] that there was no change in Kurjan's status, thus precluding reopening, necessarily limits our reviewing function to the question of whether the Board had any basis in fact for such a finding.[9] If we were to find against the Local Board on this point, the petitioner, to succeed, must then show that the change in status was based upon facts not considered when he was classified, which, if true, would justify a change in his classification.

The Government strongly contends that since the petitioner was doing the same work he did as a recipient of a NSF fellowship, and since his work was being credited toward his degree requirements, the Local Board had a basis in fact for finding that Kurjan's status had not changed. In other words, Kurjan was still, in essence, a graduate student, the Government argues, and as such, was not entitled to consideration for an occupational deferment. We disagree.

■■ After fully reviewing the petitioner's Selective Service File, we find that the Local Board, at its October 21, 1969 meeting,[10] had no basis in fact for finding that there was no change in status.[11] The uncontroverted facts before the Board at that time established

---

8. See letter of October 22, 1969, which was sent by the Local Board to the petitioner advising him of their decision on October 21, 1969.

9. Finding no change in status, there was no need for the Board, or this Court, to determine whether the other part of the proviso in § 1625.2 had been met, to wit, whether the petitioner had any control over the circumstances which resulted in a change of status.

10. This October 21, 1969 meeting was the third and final time that the Local Board entertained the request for reopening after the order to report for induction had been mailed.

11. We must note that the Local Board has not favored us with reasons for their finding that there was no change in status. While we are mindful of the fact that a Local Board is not required to state reasons for its action in a case such as ours (see 32 C.F.R. § 1625.4), we nevertheless are prompted to suggest that our reviewing function would be made immeasurably easier if the Local Board were to make it a practice to enumerate their reasons for a particular decision. See United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970).

that Kurjan, whose occupation was classified "essential" by the Scientific Advisory Committee, was devoting full time [12] to the research project over which he had sole responsibility and for which he earned $7,000 per year.[13] Quite simply, the petitioner is no longer a graduate student receiving a National Science Foundation stipend for research, but rather is a full-time, salaried employee of the University of Pennsylvania. The effective date of this change in status was April 1, 1969, when the University notified Kurjan that he was accepted as an employee. Thus, the change in status, and events subsequent (e. g., substantial salary increases and the recommendation by the Scientific Advisory Committee that his work was "essential"), represented new facts not considered by the Board when Kurjan was classified I–A on March 3, 1969. 32 C.F.R. § 1625.2(a). We further find that these new and uncontroverted facts made out a *prima facie* case for an occupational deferment [14] and the Local

12. The Government contract for the research project required "at least 30 hours per week of work." (See Dr. Haber's letter of April 16, 1969). While a recipient of a National Science Foundation fellowship, Kurjan admitted to having worked 30 hours per week on the project. (*Notes of Personal Interview*, October 7, 1968). After becoming an employee, Kurjan stated candidly in a letter to the Board, dated April 17, 1969, that he was "working the same number of hours per week on the same project as before." Assumedly, this meant 30 hours per week. Later communications to the Local Board referred to "a work week." (See letters from Kurjan and Dr. Haber dated May 19, 1969). Then, in a letter dated May 22, 1969, Dr. John Brainerd, Director of the Moore School, notified the State Selective Service Director that Kurjan "is presently doing this work on a full-time basis." The last word on this score appeared in an Occupational Inquiry Form, dated August 5, 1969, which declared Kurjan to be devoting "full time" to the project.

13. This $7,000 figure represented a $3,000 per year salary increase from only a few months previous. (See letter from John A. Graver dated May 21, 1969). It was explained by Kurjan's employer that the salary of $7,000 was below the market average since Kurjan's work on the research project was being credited towards his Ph. D. requirements. It should also be noted that this salary, although below the market average, represented a sum considerably larger than that which Kurjan received as an NSF fellow, which carried a yearly stipend of $2,200 plus tuition. (See letter from Kurjan dated April 16, 1967).

14. The regulation governing occupational deferments provides, in pertinent part, that:

"In Class II–A shall be placed any registrant whose employment in industry, or other occupation or employment * * * or whose activity in research, or medical, scientific, or other endeavors is found to be necessary to the maintenance of the national health, safety or interest." 32 C.F.R. § 1622.22(a).
"Necessary" employment is determined only when all of the following conditions exist:
"(1) The registrant is, or but for a seasonal or temporary interruption would be, engaged in such activity.
(2) The registrant cannot be replaced because of a shortage of persons with his qualifications or skill in such activity.
(3) The removal of the registrant would cause a material loss of effectiveness in such activity." 32 C.F.R. § 1622.23(a).
We conclude that on October 21, 1969, the Board had before it uncontroverted facts that satisfied the three criteria above. (See *inter alia*, letter of Dr. Fred Haber, dated April 16, 1969; Occupational Inquiry Form dated August 5, 1969; and September 18, 1969 recommendation of the Scientific Advisory Committee).
The Government contends that earlier statements of the employer (See letter from Dr. Haber dated April 16, 1969) to the effect that it would take from six to twelve months to replace the petitioner belie his "irreplaceability." In fact, the Government argues, since this amount of time has already elapsed, the petitioner could have been replaced.
We do not find this argument to be compelling. Initially, the most current analysis on this score was provided by the Occupational Inquiry Form, dated August 5, 1969, which declared Kurjan to be currently irreplaceable, and this Form ventured no estimate as to a time

Board's refusal, at its October 21, 1969 meeting, to reopen and consider anew the I–A classification was arbitrary and without basis in fact and resulted in a denial of the petitioner's right to due process of law. United States v. Turner, 421 F.2d 1251 (3rd Cir. Feb. 10, 1970); Davis v. United States, 410 F.2d 89 (8th Cir. 1969); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969); Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968); Miller v. United States, supra; United States v. Freeman, 388 F.2d 246 (7th Cir. 1967); Stain v. United States, supra; United States v. Ransom, supra; United States v. Vincelli, 215 F.2d 210 (2d Cir. 1954); United States ex rel. Berman v. Craig, supra. Accordingly, the petition for a Writ of Habeas Corpus is granted and the order to report for induction is declared null and void.

## II. "DE FACTO" REOPENING

Further, we should note an additional and independent ground for our action this day, to wit, our finding that actions by the Board, after the order to report for induction was mailed, constituted a *de facto* reopening.

The Government has argued that there can be no *de facto* reopening in a post-induction situation where, before there can be a reopening, the Board *must* specifically find that there has been a change in status due to circumstances beyond the registrant's control. (See 32 C.F.R. § 1625.2, *supra*). In other words, to determine if there has been a change in status necessarily requires an inquiry into the merits of the claim and a determination whether the regis-

trant would not qualify for a deferment or exemption. With the argument thus framed, the Government would distinguish the leading *"de facto* reopening" cases [15] on the ground that they involved *pre*-induction situations where the proviso of 32 C.F.R. § 1625.2 was not applicable.

We hold that this argument, while not lacking persuasive appeal, should not prevail in a case such as ours where the Local Board went beyond their duty of just considering the facts presented and undertook, *sua sponte*, an extensive investigation into the merits of petitioner's claim. The facts are these. After the order to report for induction was mailed, the Local Board considered petitioner's request for a reopening of his classification on three separate occasions. The first request was denied on May 20, 1969 after the Local Board had sought an advisory opinion from the State Board. Although the Board advised the petitioner that the information presented did not warrant reopening, they nonetheless noted in their own minutes that "before *final* decision" [16] they would seek a recommendation from the Scientific Advisory Committee. In addition, the Board requested the University of Pennsylvania to fill out an Occupational Inquiry Form and to furnish a statement regarding Kurjan's salary. Having received this information, the Board, on July 25, 1969, determined that the information submitted did not warrant reopening. Five days later, on its own motion, the Board sent yet another Occupational Inquiry Form to the University of Pennsylvania. When this was returned, the Local Board again sent the

within which he could be replaced. Further, it would not appear realistic for the employer in this case to have to search for a replacement for the petitioner, who has sole responsibility for the project, until it appears inevitable that his services will no longer be available to them.

15. See United States v. Noonan, No. 18031 (3rd Cir. April 6, 1970); United States v. Grier, 415 F.2d 1098 (4th Cir. 1969);

Miller v. United States, 388 F.2d 973 (9th Cir. 1967). Although Noonan, *supra*, and Miller, *supra*, arose in the post-induction stage, the unique facts in those cases, where the State Director expressly extended the Local Board's authority, created a situation not governed by the proviso of 32 C.F.R. § 1625.2.

16. See minutes of Local Board meeting of May 20, 1969.

whole file to the Scientific Advisory Committee for another recommendation. After this request was fulfilled, the Board, on October 21, 1969, again declined to reopen the classification, having found that there had been no change in petitioner's status.

■ Where, as here, the Local Board is found to have exceeded its duties and, on its own motion, to have extensively investigated the petitioner's claim, we do not think that the Board's ultimate decision on the merits of the claim should be insulated from administrative review by merely calling it a "refusal to reopen." Cutting through form, the substance of the Board's actions qualifies as a *de facto* reopening of the classification under 32 C.F.R. § 1625.11, from which the registrant was entitled to an appeal (as well as a personal appearance) under 32 C.F.R. § 1625.13.

■ Further, as the Court of Appeals for the Third Circuit has recently said: "It would * * * be a denial of procedural due process if local boards prevented administrative appeal from a refusal to reclassify by casting it in a form of a refusal to reopen." United States v. Turner, 421 F.2d 1251 (3rd. Cir. 1970). This being the case here, the Board's induction order amounted to an action which was "lawless and beyond its jurisdiction." Estep v. United States,

*supra*, 327 U.S. 114 at 121, 66 S.Ct. 423 at 427. Accordingly, the petition for a Writ of Habeas Corpus is granted and the order to report for induction is declared null and void.

■ We note that our action this day, resting on two independent grounds, may produce different consequences. As a result of our finding that there was no basis in fact for the determination that there was no change in the petitioner's status, the matter should be remanded to the Board for a decision on whether the change in the status was within the petitioner's control.[17] Normally, if this decision were adverse to the petitioner and were supported by basis in fact, the petitioner would have no right to an administrative appeal. 32 C.F.R. § 1625.2. However, since we have also found that, in evaluating whether there had been a change in status, the Local Board in fact reopened petitioner's case, the right to appeal which flows from this finding attaches to any further determination concerning this particular claim of the petitioner. Accordingly, this matter will be remanded to the Local Board for a determination of whether the change in petitioner's status was beyond his control. 32 C.F.R. § 1625.2. If the decision is adverse to the petitioner, he will have the right to an administrative appeal within the Selective Service System.[18]

17. We do not find compelling the argument that remand is not appropriate since the Local Board, in erroneously finding no change in status, waived their obligation to pass on the question whether the change in status was within the petitioner's control. The simple answer to this argument is that, finding no change in status, the Board had no need to determine whether the other part of the proviso in 32 C.F.R. § 1625.2 had been

met. By our remand order, we will allow the Board an opportunity to pass on this question.

18. We do not think it of any moment that the petitioner did not request an appeal from the Board's refusal to reopen since such refusal effectively forecloses further administrative recourse. 32 C.F.R. § 1625. We will not require the petitioner to do the quixotic.