UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles LaVerne CABBAGE, Defendant-Appellant.

No. 19775.

United States Court of Appeals,
Sixth Circuit.

July 31, 1970.

Howard Moore, Jr., Atlanta, Ga., for defendant-appellant; Peter E. Rindskopf, Atlanta, Ga., on brief.

J. N. Raines, Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee; Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before EDWARDS and McCREE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Appellant was convicted after jury trial before the United States District Court for the Western District of Tennessee on a charge of knowingly and willfully refusing to report for and submit to induction into the armed forces of the United States, in violation of 50 App. U.S.C. § 462 (Supp. IV 1965–69). He was sentenced to four and one-half years.

On appeal he contends that there is no basis in fact for his I–A classification; that the Selective Service System is racially and prejudicially imbalanced against Negroes; that he was deprived of due process of law by entry into his Selective Service file of a prejudicial FBI report without his knowledge or opportunity to answer; and that his local Selective Service Board was improperly constituted, in violation of 32 C.F.R. 1604.52(c), a Selective Service regulation.

Appellant registered with Local Board 83 in Memphis, Tennessee, and on May 8, 1964, was classified I–A. As a student first at Owen College and then at Morehouse College, he was classified II–S. This classification was continued (I–SC) April 17, 1967, to allow him to graduate from Morehouse College.

In April and June of 1967 appellant twice requested conscientious objector forms, but never filled out and returned them. On October 17, 1967, appellant was reclassified I–A by his Local Board. Appellant then asked for an appeal and for a personal appearance before the Board. This was granted and he appeared before the Board on November 14, 1967.

At his hearing before the local Selective Service Board, appellant contended that he did not fill out the Selective Service forms for conscientious objector status because they required affirmation of religious beliefs which had been held to be an unconstitutional requirement in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). The file discloses, however, that while there was evidence to the contrary, there was information from which the Local Board could appropriately have deduced that appellant objected to mandatory service through the selective system in any form, whether combatant or noncombatant. When pressed by the secretary of the Board as to what classification he should have, appellant first replied "none" and subsequently "IV-F," the latter being, of course, a classification available only after an armed forces physical examination.

Subsequent to the oral hearing before the Board and the unanimous continuation by that Board of appellant's I-A classification, the secretary of the Board wrote a letter, dated November 24, 1967, which letter was subsequently included in the Selective Service file which went to the Appeal Board. A portion of that letter serves as the basis for appellant's claim here that he was deprived of due process of law. This letter stated in part:

"This office has received a report from F.B.I. Agent [sic] that registrant has been active for about a week on the college campuses here in Memphis— Memphis State University, Lemoyne College, and Owen College, trying to organize 'black power' followers. The latter two are all-negro colleges. This registrant has been under F.B.I. investigation for quite awhile. His actions are being closely watched by the F.B.I."

The sequence of dates in the Selective Service file which is before us on this

appeal would allow the inference that the FBI report referred to was not before appellant's Local Board either at the time of his I-A classification or at the time of his hearing and the continuation of the I-A classification. But it clearly was in the Selective Service file which the Appeal Board reviewed de novo, and it does not appear that appellant or his counsel ever actually saw it or knew about it until after the date of the Appeal Board's affirmation of his I-A classification on March 13, 1968.

Thereafter appellant was routinely notified to report for induction and failed to do so. His indictment and trial followed.

Appellant's Local Board consisted of four citizens who, as required by the statute, 50 App. U.S.C. § 460(b) (3) (Supp. IV 1965–69), were residents of the county concerned. Only one of them, however, lived in the area over which Local Board 83 had jurisdiction. He was a Negro, as is appellant. The other three members of the Board were white and lived outside of Local Board 83's area. The government stipulated at trial that there were qualified citizens in the area of Local Board 83 who could have been appointed and who could have served.[1]

■ We find no merit to appellant's first two issues, as stated above. Examination of this file leaves us unable to say that there was no "basis in fact" for the classification decided upon by the Local Board. 50 App. U.S.C. § 460(b) (3) (Supp. IV 1965–69); Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Further, the record does not disclose either racial discrimination in the composition of the Board or prejudice to appellant in that regard. Clay v. United States, 397 F.2d 901 (5th Cir. 1968), vacated and remanded on other grounds sub nom., Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

■ We believe, however, that appellant's next claim of a due process violation is well-founded. The placing in his Selective Service file of a summary of an FBI report charging that he was "trying to organize 'black power' followers" and was "being closely watched by the F.B. I." was done without his knowledge, and without any notice to him. While this report may never have seen by Local Board 83 prior to its I-A classification of appellant, it clearly was before the Appeal Board which reviewed the record de novo. Appellant had no opportunity to explain or contradict the information contained therein. Even though one might argue that the statements just quoted were somewhat ambiguous, we feel that in the context of this proceeding they were clearly prejudicial to appellant's claims.

■ We believe this case is controlled by Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). We recognize that *Gonzales* dealt with Selective Service appeal procedures which have now been repealed. But the fair hearing requirement laid down by the Supreme Court is just as applicable to this case as to *Gonzales:*

"Just as the right to a hearing means the right to a meaningful hearing, United States v. Nugent, *supra* [346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953)]; Simmons v. United States, *supra* [348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955)], so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered." Gonzales v. United

---

1. "THE COURT: Abston, Harwood and Williams did not live within the area, and they are white, and the fourth member, Scott, did live within the area, and he is a negro, and that's the way it was. So you have that stipulated. Now, do you want to stipulate that there were people living in the area that were qualified and could have taken the place of the three white men who did not live in the area?

"MR. MOORE: They may not necessarily be three white men or negro men, but just three men.

"MR. KLEIN: I am sure there are."

States, *supra*, 348 U.S. at 415, 75 S.Ct. at 413.

The Court spelled out Gonzales' right to know "all the facts before the Board":

"[I]n the usual case it is the Appeal Board which renders the selective service determination considered 'final' in the courts, not to be overturned unless there is no basis in fact. Estep v. United States, 327 U.S. 114 [66 S.Ct. 423, 90 L.Ed. 567].

"It should be emphasized, moreover, that in contrast to the strictly appellate functions it exercises in other cases, the Appeal Board in handling conscientious objector claims is the first selective service board to receive the Department's recommendation, and is usually the only decision-making body to pass on the entire file. An opportunity for the registrant to reply is therefore the only means of insuring that this Board will have *all* of the relevant data. Furthermore, if the registrant is to present his case effectively to the Appeal Board, he must be cognizant of all the facts before the Board as well as the over-all position of the Department of Justice. *See* Ohio Bell Telephone Co. v. Public Utilities Comm., 301 U.S. 292, 300–305 [57 S.Ct. 724, 81 L.Ed. 1093]; United States v. Abilene & So. Ry. Co., 265 U.S. 274, 289 [44 S.Ct. 565, 569, 68 L.Ed. 1016]; Interstate Commerce Comm. v. Louisville & N. R. Co., 227 U.S. 88, 93 [33 S.Ct. 185, 187, 57 L.Ed. 431]." Gonzales v. United States, *supra*, 348 U.S. at 412–413, 75 S.Ct. at 412. (Emphasis in original.)

In a case which parallels the instant case very closely, the Eighth Circuit held:

"The action of the local board in soliciting advice from a minister unconnected with the Selective Service System after allowing him to view the registrant's file evidences a fundamental ignorance of selective service regulations. The adverse commentary was made a part of Owen's file which was forwarded by the local board to the appeal board and by the appeal board to the Department of Justice. We may assume that the information was considered by the appeal board. Striker v. Resor, (D.N.J.1968) 283 F.Supp. 923. Moreover, it is clear that Owen had no knowledge of the information and, consequently, no opportunity to rebut it until he received a copy of his selective service file subsequent to his refusal to submit to induction. While we may charge literate registrants with knowledge of information with which they are directly confronted, such as that contained on registration or classification cards, we may not expect a working knowledge of selective service regulations or inquiry at the office of the local board to guard against information received from an outside source. Inherent in the most narrow view of due process is the right to know of adverse evidence and the opportunity to rebut its truth and relevance. Chernekoff v. United States, (9 Cir. 1955) 219 F.2d 721. While the information complained of is less than inflammatory, it is clearly adverse and prejudicial, and we have no way of determining the weight and credibility attached to it by the Department of Justice and the appeal board. It is entirely natural for an appeal board to rely heavily upon the formal recommendation of the Department of Justice, United States v. Purvis, (2 Cir. 1968) 403 F.2d 555, even though the recommendation is not binding upon the board. In addition, registrants are not allowed to appear in person before an appeal board. Thus, an opportunity to reply in writing after being apprised of all information before the board is indispensable to basic due process. As was said in Gonzales v. United States, (1955) 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, at 348 U.S. 415, 75 S.Ct. 413:

" 'Just as the right to a hearing means the right to a meaningful hearing, United States v. Nugent, [346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417] *supra;* Simmons v. United

States, [348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453] *supra,* so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered.'

"We hold that Owen was denied a basic procedural right when he was classified by the local board and the appeal board without first being apprised of adverse information in his file and being given an opportunity to rebut it. The Government's contention that Owen had ample opportunity to rebut the improper information before the trial court is without merit. The courts do not sit as 'super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies,' Witmer v. United States, (1955) 348 U.S. 375, 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428, and are limited in review to determining whether a classification has a basis in fact, Estep v. United States, (1946) 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, or whether a registrant was denied basic procedural fairness. United States v. Freeman, (7 Cir. 1967) 388 F.2d 246." United States v. Owen, 415 F.2d 383, 388–389 (8th Cir. 1969). (Footnote omitted.)

*See also* Nevarez Bengoechea v. Micheli, 295 F.Supp. 257 (D.Puerto Rico 1969).

We hold that the inclusion of the summary of the FBI report in the Selective Service file which was the basis of the Appeal Board's final decision without knowledge of appellant or notice to him was a denial of a fair hearing required by the due process clause of the Federal Constitution and rendered his notice to report for induction void.

Appellant's last and potentially most important contention is that his conviction should be reversed because Local Board 83, which classified him I-A, was improperly constituted under the applicable Selective Service regulation. That regulation says:

"(c) The members of local boards shall be citizens of the United States who shall be residents of a county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction. No member of a local board shall be a member of the armed forces or any reserve component thereof. Members of local boards shall be at least 30 years of age." 32 C.F.R. 1604.52(c).

The record before us discloses that in fact three members of the Local Board did not live in the area over which the Board had jurisdiction, and the government stipulated that three qualified citizens from that area could have been found.

On appeal the government argues that this regulation is discretionary and not mandatory, and that in any event, composition of the Local Board cannot be collaterally attacked in this proceeding.

As we read this regulation it can by no means be treated as purely discretionary. The use of the word "shall" is mandatory language. The phrase "if at all practicable" should be read, we believe, as meaning simply "if there are qualified citizens available for appointment from the Local Board area."

The procedural issue argued by the government is by no means as simple to decide. It has already been presented in one way or another before a number of courts. DuVernay v. United States, 394 F.2d 979 (5th Cir.), aff'd by an equally divided court, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969); Clay v. United States, 397 F.2d 901 (5th Cir. 1968), vacated and remanded on other grounds sub nom., Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); United States v. Brooks, 415 F.2d 502 (6th Cir. 1969); Anderson v. Hershey, 410 F.2d 492, 496 n. 11 (6th Cir. 1969), vacated and remanded on other grounds sub nom., Kolden v. Selective Service Board, 397 U.S. 47, 90 S.Ct. 811, 25 L.Ed.2d 33 (1970). *See also* United States v. Bel-

tran, 306 F.Supp. 385 (N.D.Cal.1969); United States v. Machado, 306 F.Supp. 995 (N.D.Cal.1969); United States v. Lemke, 310 F.Supp. 1298 (N.D.Cal. 1969).

■ The due process issue previously discussed, of course, requires us to vacate the judgment and sentence in this case. But that fact does not mean that appellant's problems are finally resolved. The obligation to serve in the armed forces is a continuing one and the Local Board and Appeal Board may again undertake his classification under procedures which protect his right to a fair hearing.

■ We find it intolerable, however, to send appellant back for reclassification by a board which the United States government has stipulated to be improperly constituted under the Selective Service regulation without any practical remedy for such violation. The principle of administration of the Selective Service system by potential draftees' "friends and neighbors" is deeply buried in the history of the Selective Service Act.[2] Allegations of violation of the regulation in the constitution of Selective Service Boards are frequent [3] and usually tied to suggestions that such violations are racially motivated. DuVernay v. United States, 394 F.2d 979 (5th Cir.), aff'd by an equally divided court, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969); Clay v. United States, 397 F.2d 901 (5th Cir. 1968), vacated and remanded on other grounds sub nom., Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969). *See also* United States v. Brooks, 415 F.2d 502 (6th Cir. 1969).

In view of its stipulation and the adjudication of the issues hereinbefore set forth in this case, the government should (and we assume will) move promptly to reconstitute the Selective Service Board concerned in accordance with the applicable regulation. In no event will applicant be subject to reclassification until this is done.

The judgment of the District Court is vacated and the complaint is dismissed. Jurisdiction is retained for any further proceedings which may be necessary.

2. "[T]he choice [of who is to serve] is being made by the neighbors of the man, and we think that the thing must be kept simple enough so that the average citizen can see how it works. * * *" Statement of General Hershey in the hearings before the Senate Military Affairs Committee on S.4164, 76 Cong., 3d Sess. 384 (1940).

"The members of the local boards thus assume a great and important responsibility which they carry out under the continuous observation of all other mem-

bers of the local community. This in itself is the best assurance both of efficiency and impartiality and justice. It is about as far removed from bureaucracy and dictatorship as anything that can be imagined." Statement of Representative Mott at 86 Cong.Rec. 11678 (1940).

3. In Machado the District Court quoted: "For example, not one draft board in San Francisco is properly constituted." United States v. Machado, 306 F.Supp. 995, 1001 (N.D.Cal.1969).