James Eros WINFIELD, Petitioner-
Appellant,

v.

Major John C. RIEBEL, United States
Army Commanding Officer, Armed
Forces Examining and Entrance Sta-
tion, Memphis, Tennessee, Respondent-
Appellee.

No. 20292.

United States Court of Appeals,
Sixth Circuit.

Dec. 24, 1970.

Rehearing Denied Feb. 18, 1971.

Michael B. Trister, Washington, D. C. (W. J. Michael Cody, Ronold S. Borod, Memphis, Tenn., Benjamin E. Smith, New Orleans, La., on the brief), for appellant.

William A. McTighe, Jr., Memphis, Tenn. (Thomas F. Turley, Jr., U. S. Atty., J. N. Raines, Asst. U. S. Atty., Memphis, Tenn., on the brief), for appellee.

Before CELEBREZZE, PECK and BROOKS, Circuit Judges.

PECK, Circuit Judge.

The principal issue presented by this appeal is whether during the academic year 1968–69 petitioner-appellant Winfield was entitled to a I–S classification under § 6(i) (2) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(i) (2). Under a second issue, the appellant contends that his local draft board erred in refusing to reopen his classification as provided by Part 1625 of the Selective Service Regulations, 32 C.F.R. §§ 1625.1–.4, .11–.14, when he had requested to be reclassified on the ground of hardship.

· The facts relating to the above issues are not in dispute. Following appellant's graduation from high school, he attended Morris Brown College in Atlanta, Georgia, and graduated with a baccalaureate degree in May, 1967. During each of his years at Morris Brown College, appellant was classified II–S (discretionary undergraduate deferment) by Local Board No. 81 in Vicksburg, Mississippi. For the academic year 1967–68, appellant was enrolled at the University of Mississippi Law School and was given a II–S classification by his local board under authority of the President's Executive Order No. 11360, as provided in 32 C.F.R. § 1622.26(b). The President's Order became effective shortly after the passage of the Selective Service Act of 1967, 50 U.S.C. App. §§ 451–473 and under its provisions a one-year deferment was granted to those students enrolled in their first year of graduate school during the 1967–68 school year.[1] The Executive Order II–S classification expired on June 13, 1968 for appellant and he was reclassified I–A by his local board.

Appellant Winfield then appealed his I–A classification, claiming he was entitled to a hardship deferment. His local board conducted an investigation to determine the validity of his claim and asked the Public Welfare Agency in Vicksburg for information relating to the case. On July 11, 1968, the report of the Welfare Agency was submitted stating that the appellant's mother, Mrs. Gertrude Green, had been contacted and had informed the agency that appellant never sent any money home for the support of the family, and that he had written her that he was telling the Selective Service Board that he supported his brothers and sisters in order to avoid being drafted. Based on this and other information, the local board denied the appellant's request for a hardship classification. On August 15, 1968, he was

---

1. The Order also authorized the granting of a II–S classification to those graduate students in their second or subsequent years of post-baccalaureate study for the 1967–68 school year. Only those graduate students enrolled in their colleges on October 1, 1967 could qualify.

classified I–A. He appealed the local board's decision to the Mississippi State Headquarters and on November 19, 1968, the Mississippi Appeal Board classified the appellant I–A by a vote of three to zero (3–0).

Meanwhile, appellant had returned to the University of Mississippi Law School for the school year 1968–69. On March 5, 1969, he was given his pre-induction physical examination and was found qualified for induction. On April 9, 1969, he was mailed his order to report for induction on April 24, 1969. Attached to the front of this order was a statement that if he desired a postponement of induction until the end of the current semester to advise the local board and the postponement would be granted. On April 11, 1969, he requested his induction be postponed and the State Headquarters on April 16, 1969, authorized the postponement until June 1, 1969. Following this appellant attempted to be reclassified, claiming he was physically ineligible for induction. During the period from April 13, 1969, to July 31, 1969, he received a medical interview, was given another physical examination and had his complete medical record reviewed by United States Army physicians. All of the findings concluded that the appellant was medically qualified for induction.

On June 12, 1969, appellant's Selective Service file was sent to him for his personal review. Appellant claims that it was from his Selective Service file that he learned for the first time of the statements made by his mother to the Welfare Agency with regard to his hardship classification. On July 9, 1969, appellant's mother sent a letter to the local board requesting that appellant's hardship claim be reopened for the reason that the original report of the Welfare Agency was erroneous. The local board contacted the Welfare Agency and they confirmed the accuracy of their report. Accordingly, the local board denied Mrs. Green's request and shortly thereafter she wrote a second letter offering to present proof of her claim.

On July 28, 1969, Mrs. Green was advised that the local board would receive her new proof and the induction was again postponed. Appellant, Mrs. Green and certain members of the Welfare Agency were then interviewed by the local board and it received money orders, receipts and checks, which appellant produced to prove his contributions to the family. On August 8, the local board entered a summary of the interviews in appellant's file and advised him that his classification would not be reopened. Appellant responded with a letter to the local board stating he felt he had been denied statutory rights in that the hearing held before the local board constituted a reopening of his case and a cancellation of his induction order. The local board then advised him that his file had not been reopened and that he was to report for induction as ordered. On September 4, 1969, the appellant was inducted into the United States Army at the Armed Forces Examining and Entrance Station in Memphis, Tennessee.

Some ten days prior to his induction, appellant abandoned his prolonged struggle with the local board and filed a motion for preliminary injunction against his induction in the District Court for the Northern District of Mississippi. The motion was denied and appellant appealed to the Fifth Circuit Court of Appeals. While that action was pending, appellant filed a petition for writ of habeas corpus in the District Court for the Western District of Tennessee on September 4, 1969, the date on which he was inducted. That court stayed a decision on the writ until the appeal in the Fifth Circuit was decided. Appellant then moved for and was granted a voluntary dismissal of his action in the Fifth Circuit. The Tennessee District Court then considered appellant's case on its merits and on December 4, 1969, issued a memorandum decision and order denying appellant's petition. We affirm the denial by the District Court for the reasons stated herein.

With regard to the first issue on appeal, appellant argues that he was enti-

tled to a I–S deferment under the Selective Service Act of 1967 for the school year 1968–69 and that he was prejudiced when the local board denied him that classification.[2] His argument under the Act relies upon an interpretation of two of its provisions, § 6(h) (2), 50 U.S.C. App. § 456(h) (2) and § 6(i) (2), 50 U. S.C. App. § 456(i) (2) and the parties agree that appellant's right to a I–S classification turns solely on a proper reading of these two provisions.[3] To date, much litigation has arisen over this question.[4] However, the question has never before been decided by this court.

Under § 6(i) (2), any person who is enrolled as a full-time graduate student [5] during the current academic year and is presently under an order to report for induction is entitled to receive a I–S classification which enables him to be deferred:

"(A) until the end of such academic year, or (B) until he ceases

satisfactorily to pursue such course of instruction, whichever is the earlier: *Provided,* * * *."

Section 6(i) (2) then sets out three provisos, any one of which, if applicable to the graduate student under consideration, precludes him from receiving a I–S classification under that section. The provisos are:

"[first proviso] that any person who has heretofore had his induction postponed under the provisions of section 6(i) (2) of the Selective Service Act of 1948; [second proviso] or any person who has heretofore been deferred as a student under section 6(h) of such Act; [third proviso] or any person who hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of instruction at a college, university, or similar institution of learning * * *."

2. Appellant contends that if he had received the I–S deferment, his Order to Report for Induction would have been cancelled pursuant to 32 C.F.R. § 1625.14. As a result, his induction under that order would be rendered void. Appellant asserts that he was prejudiced because being in a deferred status would have enabled him to take a draft deferred job or he could have joined a Military Reserve Unit. Persons under an Order to Report for Induction cannot do this. The appellant also claims he was prejudiced because his subsequent request for a hardship classification was subject to a more stringent standard while he was under an Order to Report for Induction. See note 7 *infra.*

3. The Selective Service Regulation, 32 C.F.R. § 1622.26(a), provides that persons receiving a deferment because of enrollment in a designated field of graduate study shall be classified II–S. The authority for this classification is § 6(h) (2). Persons who are deferred under § 6(i) (2), however, receive a I–S classification under 32 C.F.R. § 1622.15. The II–S is granted because of activity in a certain field of study whereas the I–S is granted to enable a qualified student to complete his studies when ordered to report for induction no matter what his field of graduate study may be.

4. At the present time five circuits have decided the question. Four of the circuits have agreed with the appellant's position: Nestor v. Hershey, 425 F.2d 504 (D.C.Cir. 1969); Carey v. Local Board No. 2, 412 F.2d 71 (2d Cir. 1969); Marsano v. Laird, 412 F.2d 65 (2d Cir. 1969); Crane v. Hershey, 410 F.2d 966 (1st Cir. 1969); Bowen v. Hershey, 410 F.2d 962 (1st Cir. 1969); Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969). One circuit has held against the appellant's position: Rich v. Hershey, 408 F.2d 944 (10th Cir. 1969). The district courts have also divided on this question. The two district courts in this circuit deciding the question on its merits favored the appellant's position: Kaplysh v. Allen, 303 F.Supp. 1007 (N.D. Ohio 1969); Ellis v. Hershey, 302 F. Supp. 347 (E.D.Mich.1969).

5. The terms of § 6(i) (2) do not limit its coverage specifically to graduate students only. However, § 6(h) (1) of the 1967 Act grants a mandatory II–S deferment to all undergraduate students which continues in effect until they receive their baccalaureate degrees thus necessarily limiting the scope of § 6(i) (2) to college graduate students.

Since the coverage of § 6(i) (2) clearly includes all categories of graduate students who are ordered to report for induction, the last sentence of that provision was added to authorize the President to vary from its terms by granting any deferments he deems appropriate pursuant to his authority under subsection 6(h) of the Act. The last sentence reads:

"Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service in the Armed Forces or training in the National Security Training Corps of any category or categories of students for such periods of time as he may deem appropriate."

Appellant argues that this last sentence was not a grant of authority to the President, but was merely a clarification designed to dispel any doubts that § 6(i) (2) was intended to limit the President's power under § 6(h). The language appellant refers to under § 6(h) is set out in subsection (h) (2) as follows:

"the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons * * * whose activity in graduate study, * * * is found to be necessary to the maintenance of the national health, safety, or interest: * * *."

We agree that the President's Executive Order was issued pursuant to the regulations under § 6(h) (2) above. However, the Executive Order covered, in part, that category of students who would otherwise have received a I–S deferment under § 6(i) (2) for the academic year 1967–68. The authority to do this was found in the last sentence of § 6(i) (2). In other words, the President did precisely what he is authorized to do under the last sentence of § 6(i) (2).

This leads us to the third proviso of § 6(i) (2). Paraphrased, that proviso denies a I–S deferment to any person who had previously been deferred under authority of § 6(i) (2). Because appellant's Executive Order deferment was granted under authority of § 6(i) (2) as outlined above, he cannot claim a second deferment under that provision.

When Congress passed the Selective Service Act of 1967, one of its primary objectives was to eliminate the pyramiding of deferments by graduate students which had resulted in a disproportionate number of such persons avoiding military service. The findings of the Congressional Armed Services Committee prior to passage of the Act indicated that graduate students performed far less military service than persons ending their education with a baccalaureate degree. In his March 6, 1967 message to Congress, the President recommended that graduate student deferments be eliminated, except for those students entering medicine or dentistry. 1 U.S. Code Cong. & Admin.News, p. 1329 (90th Cong., 1st Sess., 1967). The Act was designed to grant college students just one deferment to enable them to complete the requirements for a baccalaureate degree without fear of being drafted. Any deferments for graduate students were to be granted by the President as he may from time to time deem necessary. See 113 Cong.Rec. 15.424, 15.425.

To hold that appellant Winfield was entitled to a I–S graduate deferment after receiving a II–S graduate deferment would effect a continuation of the very practice the 1967 Act was primarily designed to prevent, the pyramiding of graduate student deferments. The wording of the Executive Order itself demands a result contrary to that requested by the appellant. The Order stated that any first-year graduate student may be placed in Class II–S:

"if he has entered the first class commencing after the date he completed the requirements for admission and

shall be deferred *for one academic year only,* or until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier." 32 C.F.R. § 1622.26(b) (Emphasis added).

The emphasized language contemplates no further deferments to graduate students. Moreover, the above quoted language follows so closely the words beginning with subparagraph (A) of § 6(i) (2) that a deferment granted under either of the provisions would terminate at exactly the same point in time, which further indicates that the Executive Order was issued in part to defer students who would otherwise have received their deferments under that provision. No reason has been presented to this court to explain why the President would intend to give persons in appellant's position a two-year deferment as opposed to just one year. Two years would not have enabled appellant to complete his requirements for a law degree. It would instead have left him one year short.

■ By his Executive Order, the President did not designate areas of study as being necessary to the national health, safety or interest as is contemplated by the provisions of § 6(h) (2) standing alone. It can only be assumed that the purpose of the Order was to afford some relief to those graduate students who would be most immediately affected by the passage of the Act, which became effective July 1, 1967. See Green v. Hershey, 302 F.Supp. 43, 46 (N.D.Tex.1969). The Order acted primarily to insure that these students would not have to change their plans on such short notice, a purpose more in agreement with the intent of § 6(i) (2), and it also prevented the possibility of inequitable treatment among graduate students in that those receiving a baccalaureate degree in June, 1967 might

have been granted a deferment under § 6(i) (2) whereas those graduating in August, 1967 might have been denied the deferment under the new Act.[6] In summary, we believe that when the President granted a Class II–S deferment to all graduate students for the academic year 1967-68, he did so under authority of § 6(i) (2), under which he may provide for such deferments by regulations prescribed under subsection (h). Thus, since appellant had already received one deferment under authority of § 6(i) (2) he was prevented by the third proviso from receiving another deferment under its provisions. Having decided appellant was not entitled to a I–S deferment, we do not reach the question of prejudice, which he also contended under this issue.

The second issue for consideration in this case concerns appellant's claim of hardship. He has made three contentions under this issue, only the first of which directly involves the merits of his alleged right to a hardship deferment. Appellant first contends that in August, 1969, when the local board reconsidered the facts of his case, he had made out a prima facie case for a hardship deferment which entitled him to a reopening of his case. His second contention involves a letter, dated July 30, 1969, which was sent from the office of the State Director of Selective Service to the local board authorizing it to postpone appellant's induction while the board considered his new evidence. Appellant claims that the letter was actually an order to the board to reopen his case, thus cancelling his Order to Report for Induction as provided by 32 C.F.R. § 1625.3(a) of the Regulations. His third contention argues simply that his case was in fact reopened when the board reconsidered the facts of his case in August, 1969, which would also act to can-

6. Since the new Act became effective July 1, 1967, students continuing in an undergraduate status after that date may be deemed to be deferred under § 6(h) (1) of the new Act which by its terms would then preclude such students from receiving a I–S deferment were they to enter graduate studies by October 1, 1967, during the 1967–68 academic year. The President's Executive Order clarified their right to a deferment for that year only.

cel his induction order by authority of 32 C.F.R. § 1625.14 in the Regulations.

The question under appellant's first contention is whether there was an abuse of discretion when the local board decided appellant had not alleged a prima facie case under the provisions of 32 C.F.R. § 1625.2. It has already been decided in the Sixth Circuit that if a registrant submits new facts to the local board which, if true, would make out a prima facie case for a new classification, refusal of the draft board to reopen his classification would amount to an abuse of discretion. Townsend v. Zimmerman, 237 F.2d 376, 377 (6th Cir. 1956). Stated differently, this court's inquiry is limited to whether the local board had a "basis in fact" for declining to reopen appellant's classification. Estep v. United States, 327 U.S. 114, 122–123, 66 S. Ct. 423, 90 L.Ed. 567 (1946); see United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966). The District Court stated in its memorandum decision and order for this case that, "We are satisfied, however, that a basis in fact (indeed much more) is shown for declining his claim for hardship deferment * * *." Winfield v. Riebel, Civil No. 69–296 (W.D.Tenn.1969). We agree.

The local board in considering appellant's request for reclassification in August, 1969, was guided by the requirements of § 1625.2 which reads in part as follows:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of * * * any person who claims to be a dependent of the registrant, * * * if such request is accompanied by written information *presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification;* * * * provided, * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." (Emphasis added.)

It was appellant's mother, Mrs. Green, who wrote a letter to the local board claiming she had been supported by appellant and that she could produce new facts for the board's consideration which would justify a change in the registrant's classification. Mrs. Green stated that the information in her son's Selective Service file pertaining to the Welfare Department's report in July, 1968, that her son did not support her was erroneous. She claimed as her son has claimed that the first time she learned of this report was from her son's Selective Service file in June, 1969.

At this point, it should be noted that if in fact appellant was never informed of his mother's statements to the Welfare Agency prior to the board's decision on his hardship classification in 1968, then the omission by the board may well have been a violation of Procedural Due Process because of the potentially great damage the statement could have caused to appellant's case. United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970). However, we believe appellant was not prejudiced by the alleged omission of the local board in that the board reviewed the facts of his case in August, 1969, after he learned of his mother's statements and again decided that the facts would not be sufficient to grant a hardship classification. See United States v. Cabbage, *supra.*

This leads us to the very difficult situation that the board was faced with. It had reclassified appellant numerous times over the past few years; a complete investigation had already been made into appellant's hardship claim from which the report of a neutral party, the Welfare Agency, indicated appellant was not supporting his family; and his hardship claim had been reviewed and subsequently denied on appeal. In all fairness to appellant, however, the board did not consider his claim as being clear-

ly frivolous, but agreed instead to make determination as to whether appellant could produce enough facts to make out a prima facie case and thus warrant a reopening under § 1625.2. See Stain v. United States, 235 F.2d 339 (9th Cir. 1956).

The standard for a hardship classification is set out in 32 C.F.R. § 1622.30(b) and reads as follows:

"In Class III–A shall be placed any registrant whose induction into the armed forces would result in *extreme hardship* (1) to his * * * parent, * * * brother, or sister who is dependent upon him for support,

* * *." (Emphasis added.)

To establish a prima facie case under this regulation, the registrant must allege sufficient facts "not only that he makes a substantial financial contribution to a dependent listed in the regulation, but also that the dependent, if deprived thereof, would suffer extreme hardship." See United States v. Burlich, *supra*, 257 F.Supp. at 911. The board's inquiry was thus confined solely to whether appellant's facts met the above standard and accordingly, would be sufficient to justify a change in the registrant's classification.[7]

The only form of extreme hardship appellant claimed his family would suffer as a result of his induction was the effect the induction would have on his financial contribution. The local board's summary of appellant's proof indicated that during three years of the five year period to 1969, appellant contributed a total of $100.00 to his mother and family; he gave $40.00 in 1964, $60.00 in 1965 and $00.00 in 1967. The summary further indicates he contributed only slightly more in the other years: $382.-00 in 1966, $136.09 in 1968 and $190.00 in 1969.[8] The board stated that his mother and family needed a minimum of $324.00 to $328.00 income per month to cover their expenses. The family had been receiving Public Welfare assistance since June, 1965 and in February, 1967, the family began receiving food stamps. The appellant has two sisters, both single, ages 20 and 22, one of whom was living at home with the family. The Welfare Department's records stated that the Green family indicated periodically to the department that no contributions were being received by it from any source.

No evidence indicated that the contributions by appellant could not be replaced by some other family source. At best, the evidence which the board was asked to consider was contradictory. It is therefore, our conclusion that the board's determination that the registrant had not presented sufficient facts to warrant a reopening was not an abuse of discretion and does have a sufficient "basis in fact." See Mulloy v. United

---

7. 32 C.F.R. § 1625.2 requires the local board to determine first whether "there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." This inquiry is to be made before the board reaches the question of whether the appellant has presented sufficient facts to justify a reopening in the case where the registrant has been mailed an Order to Report for Induction prior to sending a request to the board for a reopening. Since appellant was under an Order to Report for Induction at the time his mother requested a reopening, the board was required to make the preliminary inquiry. The board's findings, however, were framed in terms of establishing whether the appellant's facts justi-

fied a reopening. Presumably, the local board considered the allegation by appellant that he was unaware of the statements by his mother to the Welfare Department until he discovered them in his Selective Service file in June, 1969, to be the requisite change in the registrant's status resulting from circumstances beyond his control under the regulation.

8. During his testimony before the District Court, appellant stated that he had contributed more money to his family for each of the years than the local board's summary indicated. Presumably, appellant was not able to prove his claim and this court accepts the findings of the local board as presented in its summary.

States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1969).[9]

█ Appellant's next contention states that the letter sent by the office of the Director of Selective Service for Mississippi was actually an order to the local board to reopen appellant's case. The letter said:

"This letter will authorize a postponement of the order for induction on the above-captioned registrant for a period of thirty (30) days in order for the local board to consider additional evidence."

The authority for the State Director to grant such a postponement is found under 32 C.F.R. § 1632.2, which provides that he may postpone the induction of any registrant for any good cause known to him. See Miller v. United States, 388 F.2d 973, 974 (9th Cir. 1967). Section 1632.2(d) stipulates that a postponement under that provision does not cancel the order to report for induction.

The appellant argues that the postponement, which was requested by his counsel, was granted under the following authority of § 1625.3(a):

"(a) The local board shall reopen and consider anew the classification of a registrant upon the written request of the State Director of Selective Service * * * and upon receipt of such request shall immediately cancel any Order to Report for Induction * * * which may have been issued to the registrant."

If the letter was a request to reopen appellant's case, it surely could have been worded in a more definitive manner. The letter could have stated directly that the local board was to reopen appellant's case or it could have requested that appellant's case be considered for a new classification. Instead, the letter was framed as a simple request for a postponement so that appellant could have time to submit any new facts to the local board. The letter did not purport to direct the local board to reconsider the merits of appellant's case. It did, however, ask the board to take a look at the new facts appellant was alleging. From this, the board could then determine whether or not a reopening was warranted.

█ The final argument of the appellant would have this court believe that the local board's careful consideration of his new facts was actually a reopening of the case and a reconsideration of his classification on the merits. We think instead that the board did no more than was reasonable under the circumstances in order to determine whether the appellant had facts sufficient to justify a reopening. The regulations under § 1625.-2 require the registrant to present facts to the local board so that it can determine whether to reopen the classification, and we find no abuse of discretion in its negative resolution of that question.

The appellant has cited Miller v. United States, *supra,* as support for the proposition that what the local board actually did in this case was to consider the registrant's classification on its merits and then send him a letter denying that it had reopened his case. *Miller,* however, is distinguishable from the present case on two important grounds. First, the *Miller* court stated the following rule which was basic to its opinion:

"It cannot be held that the statements and information in the appellant's letter and executed form No. 150, if true, would not be able to provide basis for a conscientious objector classification and so could not justify a consideration of the question of

9. In *Mulloy,* the registrant requested that his classification be reopened based on new facts which he had presented to his local board and which were not conclusively refuted by information in his Selective Service file. The Supreme Court held that the registrant had presented a prima facie case to the local board and it was, therefore, an abuse of discretion for the board not to reopen his classification. 398 U.S. at 418, 90 S.Ct. 1766. Under the facts of the present case, however, no such prima facie case was presented to the local board.

change in his classification." 388 F. 2d at 975.

As has already been pointed out, the local board in the present case had a basis in fact for determining the appellant had not made out a prima facie case for reclassification. Second, the local board in *Miller* had never before considered the registrant's conscientious objector claim. Thus, the local board had received facts sufficient to make out a prima facie case and it had never made a decision concerning the issue then before it. The circumstances in the present case were different on both grounds.

Affirmed.

### On Rehearing

Petitioner-appellant's petition for rehearing having come on to be considered, and of the judges of this Court who are in regular active service less than a majority having favored ordering consideration en banc, the petition has come on for consideration by the panel which determined the appeal on its merits.

The sole thrust of the petition for rehearing is that our decision herein is inconsistent with the decision of this Court in United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970). We disagree. In *Cabbage* the appellant had presented the contention to the Local Selective Service Board and the Appeal Board that there was information before the Local Board from which it could have appropriately deduced that as a conscientious objector appellant objected to mandatory service through the selective system in any form, whether combatant or noncombatant. We therein held that " * * * inclusion of the summary of the FBI report [of appellant's alleged 'black power' activities] in the Selective Service file which was the basis of the Appeal Board's final decision without knowledge of appellant or notice to him was a denial of a fair hearing required by the due process clause of the Federal Constitution * * *." 430 F.2d at

1041. We concluded the report to be clearly prejudicial to appellant's claim before the Appeal Board, and further concluded that "[a]ppellant had no opportunity to explain or contradict the information contained therein." 430 F.2d at 1039.

■ Similarly, in the present case appellant claimed that he was not informed of potentially damaging statements allegedly made by his mother to a welfare worker, which were included in his Selective Service file at the time of its initial consideration by both the Local and Appeal Boards. However, there the similarity ends, because not only was he thereafter made fully aware of the statements but was given an opportunity "to explain or contradict" them. During a subsequent conference with the Local Board, his mother personally made such refutation, infering that the representation made to the welfare agency was that best calculated to enlist its favorable consideration. However, it is obvious that any statements tending to negate support payments to the mother could only become relevant as a refutation of a claim that he had made a substantial financial contribution to his family, and he had offered no evidence of such support. Thus a clear distinction exists in the factual situation in that in *Cabbage* the black power report was relevant to an issue created by evidence presented to the Board by the petitioner whereas in the present case appellant had made no prima facie showing.

■ Additionally, we observe that the conscientious objector position urged by the petitioner to his Board in *Cabbage* was one placing his state of mind in issue and thus requiring consideration of subjective evidence such as that offered by the black power statement. In the present case, the issue was whether he did or did not contribute dollars and that determination depended upon purely objective evidence. The burden of establishing the providing of support lay with appellant. He failed to offer evidence of such support, and therefore

what his mother may or may not have said at some different time to some different agency was completely irrelevant.

An examination of the record does not disclose any basis on which the Local Board or the Appeal Board could possibly have concluded that appellant was entitled to a hardship classification. It must follow that even had he not been presented with the opportunity for refutation of the statement in issue (which, as we have pointed out, was not only extended but was exercised), the presence of the statement in question in his Selective Service file could not have been prejudicial to appellant. We conclude that no inconsistency exists between *Cabbage* and our opinion in the present case, and accordingly,

It is ordered that the petition for rehearing be and it hereby is denied.