UNITED STATES of America,
Plaintiff-Appellee,

v.

Gary Allen MELBY, Defendant-
Appellant.

No. 71–3045.

United States Court of Appeals,
Ninth Circuit.

Aug. 24, 1972.

Michael D. Nasatir, of Nasitir, Sherman & Hirsch, Beverly Hills, Cal., for defendant-appellant.

William D. Keller, U. S. Atty., Jerry L. Newton, Barbara Meiers, Eric A. Nobles, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before MERRILL, ELY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal from a conviction for failure to report for induction into the armed services, a violation of 50 U. S.C. App. § 462.

Appellant registered with his local board in June 1965, was classified I–A, and was ordered to report for induction in August 1966. This induction order was cancelled on September 14, 1966, and appellant placed in class III–A because his wife had become pregnant. On April 7, 1967, appellant completed a Current In-

formation Questionnaire, stating that he lived with his wife and giving the same address for himself and his mother. On November 17 and December 9, 1969, the board sent appellant Dependency Questionnaires, which were never returned. The board then ordered the appellant to appear before them on January 5, 1970, which appellant failed to do. On February 19, 1970, the board received a letter which stated that the defendant was not living with his wife and child, but only with his mother. A month later, the board reclassified appellant I–A; appellant did not request a personal appearance or an appeal from this classification.[1]

An order to report for induction on June 2, 1970, was mailed to appellant on May 19, 1970. He reported as ordered, and advised the examiners that in July 1969, he had been arrested for driving under the influence of dangerous drugs and was on probation. He also divulged a record of traffic offenses, dating back to August 1967. Appellant's induction processing was therefore halted, while the Service acted to waive his traffic offense record (July 14, 1970), and secure a moral clearance (August 5, 1970). Appellant was advised that his processing was incomplete and that he would be informed of a future date to report to complete his induction.

On August 20, 1970, he was ordered to report for induction on September 15, 1970, under his original order of May 19, 1970. He failed to report. Another order was sent on December 15, 1970, ordering appellant to report for induction on January 5, 1971, but he again did not do so. On April 7, 1971, appellant was indicted for failure to report for induction on January 5, 1971. He was found guilty by the court, sitting without jury, and sentenced to three years' imprisonment, the execution of which sentence was suspended, and appellant was placed on probation. He appeals from his conviction.

Appellant argues that his reclassification from III–A to I–A on March 13, 1970, was invalid because he had not been given notice of or an opportunity to respond to the factual allegations contained in the adverse letter received by the board in February. He cites Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955), United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970), and United States v. Cummins, 425 F.2d 646 (8th Cir. 1970), as well as other cases which hold that adverse reports in his file, of which the registrant has no knowledge, must be called to his attention and he must be afforded an opportunity to reply to them. *See also* United States v. Fisher, 442 F.2d 109 (7th Cir. 1971); Winfield v. Riebel, 438 F.2d 271 (6th Cir. 1971); United States v. Owen, 415 F.2d 383 (8th Cir. 1969).

On the facts of this case, where appellant twice failed to answer Dependency Questionnaires sent to him and failed to respond to an order to appear before the board, a serious question exists as to the applicability of the *Gonzales-Cabbage* rationale.[2]

---

1. Appellant does not question the mailing by the board and receipt by him of the Dependency Questionnaires, the order to appear before the board which he ignored, or the notice of his I–A classification.

2. Under the regulations in effect at the time appellant was reclassified, he was entitled to a III–A dependency classification if (1) he had "a child or children with whom he maintains a bona fide family relationship in their home." Exec. Order No. 11360, ¶ 5(1), 32 Fed.Reg. 9791 (June 30, 1967), as amended Exec. Order No. 11527, ¶ 6, 35 Fed.Reg. 6572 (April 24, 1970) (now 32 C.F.R. § 1622.30); or (2) his "induction into the armed forces would result in extreme hardship to his wife . . . [or] child . . . who is dependent upon him for support . . . ," Exec.Order No. 10714, ¶ 2(c)(2), 22 Fed.Reg. 4273 (June 13, 1957), amending Exec.Order No. 10292, ¶ 5, 16 Fed.Reg. 9851 (Sept. 25, 1951), as amended Exec.Order No. 11527, *supra* at ¶ 7 (now 32 C.F.R. § 1622.30).

In addition, it is the duty of every classified registrant to keep his board currently informed of his dependency

A significant distinguishing factor between those cases and that of appellant is that appellant failed to request either a personal appearance or an appeal with respect to his I–A classification. Where he has thus failed to exhaust his administrative remedies, his right to complain about the procedures which caused his reclassification becomes suspect.

Proper application of the doctrine of exhaustion to foreclose the availability of a defense to a criminal prosecution for failure to submit to induction is delineated in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1968), and in McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

After reviewing the operation of the exhaustion doctrine generally, the Court in McKart pointed out that the decision whether exhaustion should be required in a given case depends upon "whether allowing all similarly situated registrants to bypass administrative appeal procedures would seriously impair the Selective Service System's ability to perform its functions." 395 U.S. at 197, 89 S.Ct. at 1665. The Court particularized some of the interests which a registrant might subvert by his failure to follow the administrative pattern. Thus, the system must not be denied its opportunity "to make a factual record" from which to determine the proper classification of the registrant, or "to exercise its discretion or apply its expertise" in the course of reaching its decision. Exhaustion also tends to ensure that the agencies will have multiple opportunities "to discover and correct [their]own errors," and, therefore, to make judicial review unnecessary. 395 U.S. at 194–95, 89 S.Ct. at 1663; accord, McGee v. United States, supra, 402 U.S. at 484–85, 91 S.Ct. 1565; Lockhart v. United States, 420 F.2d 1143, 1145 (9th Cir. 1969).

McKart, however, also cautioned against the indiscriminate use of the exhaustion doctrine in criminal cases where it could produce a harsh result by stripping a defendant of his only defense. "Such a result should not be tolerated unless the interests underlying the exhaustion rule clearly outweigh the severe burden imposed upon the registrant if he is denied judicial review." 395 U.S. at 197, 89 S.Ct. at 1664.

The Court did not require exhaustion in McKart, where only a question of law, which further administrative review would not have helped to resolve, was involved. In McGee, where the resolution of factual issues was critical, failure to exhaust administrative remedies was held to bar the defense of erroneous classification.

We find that this case is controlled by McGee. Whether the registrant, after a two year interval of complete lack of contact with his board, was still entitled to a dependency deferment was a question for factual resolution which the board would use its expertise to determine. By ignoring the board's solicitation of information by means of Dependency Questionnaires and an order for personal appearance, Melby made the exercise of board responsibility impossible. See United States v. Thompson, 431 F.2d 1265, 1270 (3rd Cir. 1970). Appellant's failure was two-fold; he did not respond to the board's requests before his reclassification, and he did not exercise his rights to a personal appearance and an appeal after his reclassification. It is to further these objectives of the administrative system, as well as the essential interest in allowing the agency an opportunity to correct its own errors, that the exhaustion requirement is applied in this case.

That the challenged action of the board may have resulted in part from its consideration of an adverse letter without notice to appellant does not change our conclusion. The letter contained factual information relating to

status, 32 C.F.R. § 1641.7(a), and to submit to the local board in writing all information which the local board may

request, within ten days after the date of the request. 32 C.F.R. § 1641.7(b).

appellant's eligibility for a hardship deferment, so appellant's failure to submit previously solicited information about his status, and to request a personal appearance and appeal from his reclassification, were intimately related to the fact-finding and judgmental interests involved in the administrative system. He did not avail himself of those opportunities which were freely available to him to apprise himself of the existence of the letter and to rebut its allegations and implications.[3]

In the instant case, unlike *Gonzales*, when the local board determined to reclassify appellant, it would not necessarily have been the only board to pass on the entire file, or the last board to do so. By exercising his right to a personal appearance, appellant would have activated a procedural mechanism whereby the local board could have reconsidered its decision after discussing his case with appellant, 32 C.F.R. § 1624.2(b), (c); by exercising his right to appeal, appellant would have placed his entire file before the appeal board, with which he could have filed a statement, and which would have passed on his claim de novo, 32 C.F.R. §§ 1626.12, 1626.13, 1626.24, 1626.26. Here the administrative body which considered evidence unknown to the registrant was not the final body to which he could have effectively presented his case, nor was it appellant's only meaningful opportunity to state his case before the local board.

■ Appellant also argues that the order to report for induction which he disobeyed was invalid because postponement of his induction from June 2, 1970,

to January 5, 1971, was beyond the 120-day statutory limit set forth in 32 C.F.R. § 1632.2(a). However, in United States v. White, 447 F.2d 1124, 1127 (9th Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 714, 30 L.Ed.2d 740 1972), this court held that "one who has willfully failed to appear for or refused to submit to induction when validly ordered to do so cannot thereafter complain of mere administrative delay."

In *White*, the registrant was first ordered to report for induction on June 19, 1968, but failed to do so. He was subsequently ordered to report at three later dates, appearing only at the last, on September 1, 1970, when he refused to be inducted. Although the time between those two dates was greater than 120 days, the time was charged to the registrant and not against the government under 32 C.F.R. § 1632.2.

■ Here, the appellant was first ordered to report on June 3, 1970; he complied with the order, but his processing that day was incomplete. He was later ordered to report on September 15, 1970, under his original order; he failed to do so. Another order, again under the original, was issued for January 5, 1971; he did not comply, for which he was indicted.

Under *White*, the time between September 15, 1970, and January 5, 1971, is not chargeable to the government's 120 days. Therefore, whether the time from June 3 to September 15, 1970, falls within 32 C.F.R. § 1632.2(a) is irrelevant, for it does not exceed 120 days.

The judgment is affirmed.

---

3. Appellant had a further right, pursuant to 32 C.F.R. § 1670.8(a), to examine the information in his file at any time.